**In re Levy FORD, Jr., Debtor.**

**Bankruptcy No. 79–2–1846–L.**

United States Bankruptcy Court, D. Maryland.

April 15, 1980.

L. Stephen Hess, Shale D. Stiller, Irving E. Walker, Frank, Bernstein, Conaway & Goldman, Baltimore, Md., for debtor, Levy Ford, Jr.

Gary R. Greenblatt, pro se, Niles, Barton ·& Wilmer, Charles M. Tatelbaum, Sherbow, Shea & Tatelbaum, Baltimore, Md., for the trustee, Gary R. Greenblatt.

Nelson I. Fishman, Baltimore, Md., in support of the trustee.

Before GLENN J. GOLDBURN and HARVEY M. LEBOWITZ, Bankruptcy Judges.

## MEMORANDUM OPINION AND ORDERS

This court, sitting *en banc*, is asked to determine the impact of the Bankruptcy Reform Act of 1978, P.L. No. 95–598 (November 6, 1978), 11 U.S.C. §§ 101 *et seq.* (the "Code"), on property owned as tenants by the entireties under Maryland law when only one spouse has filed a Voluntary Petition under Chapter 7 of the Code and has elected to take state exemptions under § 522(b)(2) of the Code. The significance of the issues to be decided in this case is demonstrated by the substantial interest evidenced by the bar of this State and the participation of various members of the bar in these proceedings. Extensive Memoranda and Reply Memoranda have been submitted by the parties and a hearing was held on February 12, 1980, at which time a Stipulation of Facts was presented and oral arguments heard. Upon request of counsel, both judges of the Bankruptcy Court of this district participated in these proceedings for the purpose of determining whether there would be any difference of opinion in this district regarding the issues presented. There is none, and we both concur in the opinion expressed below.

The question comes before the court on the following facts. On October 11, 1979, Levy Ford, Jr., the debtor filed a Voluntary Petition under Chapter 7, pursuant to § 301 of the Code. His spouse has not filed a bankruptcy petition. The debtor, on December 21, 1979, filed an Amended Schedule B–1 listing as real property the house and surrounding property at 1710 Windemere Avenue, Baltimore, Maryland 21218. On December 26, 1979, the debtor filed an Amended Schedule B–2, listing as personal property *inter alia* : under c., certain household goods, supplies, and furnishings, as set out on a list attached thereto; under d., a set of encyclopedias and, under f., a 1973 Chevrolet Malibu and a 1974 Chrysler. Both of these schedules with respect to the above real and personal property contained the caveat that "[t]his property is owned by the debtor and his wife as tenants by the entireties; it is the debtor's position that this property is *not within* the estate in bankruptcy as designated by 11 U.S.C. § 541(a)." (Emphasis supplied.)

Mr. Ford elected to avail himself of the so-called "state exemptions" and filed on December 26, 1979, an Amended Schedule B–4 claiming the house and surrounding

property, the household goods, supplies, furnishings, and books, and the two automobiles as exempt with the statement that "[t]he property listed above is owned by the debtor and his wife as tenants by the entireties and therefore is *exempt* under [11] U.S.C. § 522(b)(2)(B)." (Emphasis supplied.)

Section 522(*l*), 11 U.S.C., in part provides that "[u]nless a party in interest objects, the property claimed as exempt on such list [Schedule B–4] is exempt." On January 2, 1980, the trustee, Gary R. Greenblatt, Esq., filed an Amended Report Of Exempt Property in which he denied the claim of the debtor that property held as tenants by the entireties is exempt under Maryland law. The trustee asserts his belief that such an exemption is not within the scope of the Bankruptcy Code thus making those assets a part of and retained within the bankruptcy estate. In addition, the trustee claims that the debtor can not take either the furniture, or the two automobiles, as exempt property since there is no equity in these items, and further that the Chrysler is titled exclusively in the debtor's name and not held as tenants by the entireties.

In response to the trustee's report, the debtor on January 2, 1980, filed an Amended Objection Of Debtor To Trustee's Determination Of Exempt Property in which it was asserted that a tenancy by the entireties interest in real and personal property is exempt from process under Maryland law and therefore is within the exemption provided by 11 U.S.C. § 522(b)(2)(B); that the fact that personal property is subject to a security interest does not impair the right to claim the property as exempt; and that the titling of a car in the name of the debtor alone does not invalidate the fact that the car is owned by the debtor and his wife as tenants by the entireties. The immediate parties to this controversy are the debtor and the trustee, and this court has been called upon to determine the issues raised by the Trustee's Amended Report Of Exempt Property and the Amended Objection Of Debtor To Trustee's Determination Of Exempt Property.

The following Stipulation of Facts was introduced into evidence as a joint exhibit of the parties (Stipulation, Joint Ex. # 1).

1. The debtor, Levy Ford, Jr., was born on December 3, 1941.

2. The debtor's wife, Della Mae Ford, was born on February 7, 1944.

3. The debtor and his wife have been married since December 10, 1969.

4. All of the debtor's household goods, supplies and furnishings, including the set of encyclopedias, were acquired by the debtor and his wife during their marriage and before November 6, 1978, and are held by them as tenants by the entirety.

5. The debtor's 1973 Chevrolet Malibu was acquired by the debtor and his wife during their marriage and before November 6, 1978, and is titled in both of their names as tenants by the entirety.

6. The personal property described above in Paragraphs 4 and 5 [was] purchased with funds some of which were provided by the debtor and some of which were provided by the debtor's spouse. Both spouses were employed when the personal property was acquired.

7. The real property known as 1710 Windemere Avenue, Baltimore, Maryland was purchased by the debtor and his wife on or about April 28, 1971, is titled in both of their names, and is owned by the debtor and his wife as tenants by the entirety. The consideration for the purchase of this property, other than that provided by the mortgagee, Provident Savings Bank, was furnished entirely by the debtor. At the time of purchase, however, the debtor's wife was employed at the Social Security Administration, 110 Paca Street, Baltimore, Maryland. After the original purchase of the real property, the mortgage payments have been made from joint bank accounts owned by the debtor and his wife. These joint bank accounts consisted of funds deposited by both the debtor and his wife from their respective earnings; each also has withdrawn money from these accounts for both joint and personal purposes.

8. None of the real or personal property described above was obtained by the debtor and his wife as a gift.

9. All of the debtor's obligations outstanding as of the date his Voluntary Petition was filed were incurred before October 1, 1979, and some of them were incurred before November 6, 1978.

10. Neither the debtor nor his wife had any specific intent with respect to creditors when they acquired their various assets.

11. The court may take judicial notice of the fact that a number of husbands and/or wives in the State of Maryland purchased assets as tenants by the entirety before November 6, 1978 with the understanding that, if either of them should become involved in bankruptcy proceedings, the assets held as tenants by the entirety would not be subject to the claims of a trustee in bankruptcy of the bankrupt spouse.

The issues raised by this controversy and now before the court are:

1. Where a debtor holds property as a tenant by the entirety under Maryland law, does he have an interest which would become property of the bankruptcy estate under 11 U.S.C. § 541(a) when only one spouse is in bankruptcy.

2. If the debtor's interest in property as a tenant by the entirety under Maryland law is property of the estate under § 541(a) of the Code, may it be exempted by the debtor from property of the estate under 11 U.S.C. § 522(b)(2)(B).

3. If the debtor's interest in property as a tenant by the entirety under Maryland law is property of the estate, under § 541(a) of the Code, and is not exempt under § 522(b)(2)(B) of the Code, does § 541(a), as implemented by 11 U.S.C. §§ 363(h) and 363(j) of the Code, deny due process in violation of the Fifth Amendment of the Constitution if those sections are construed to apply retrospectively to tenancies by the entireties created prior to the enactment of the Code.

For the purposes of determining the first two issues raised, the court will assume, without deciding, that the provisions of § 541(a), as implemented by §§ 363(h) and 363(j), are constitutional and are applicable not only prospectively from the date of the enactment of the Code, November 6, 1978, but also retrospectively from said date to the tenancies by the entireties created by the debtor and his spouse.

I. WHERE A DEBTOR HOLDS PROPERTY AS A TENANT BY THE ENTIRETY UNDER MARYLAND LAW, DOES HE HAVE AN INTEREST WHICH WOULD BECOME PROPERTY OF THE BANKRUPTCY ESTATE UNDER 11 U.S.C. § 541(a) WHEN ONLY ONE SPOUSE IS IN BANKRUPTCY.

Section 541(a) of the Code provides:

The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

The question of what is property under § 70(a) of the Bankruptcy Act of 1898, as amended (the "Act"), is a federal question. *Chicago Board of Trade v. Johnson*, 264 U.S. 1, 10, 44 S.Ct. 232, 234, 68 L.Ed. 533 (1924). The question of what constitutes property within the meaning of § 541 of the Code apparently continues to remain a federal question. *Report of the Committee on the Judiciary*, House of Representatives, To Accompany H.R. 8200, H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 367–8 (1977) [hereinafter "House Report"]; *Report of the Committee on the Judiciary*, United States Senate, To Accompany S. 2266, S.Rep. No. 95–989, 95th Cong., 2d Sess. 82–3 (1978) [hereinafter "Senate Report"]; 4 Collier on Bankruptcy ¶ 541.02 at 541–12 (15th ed. 1979). Consequently, the question of whether a tenancy by the entirety interest as defined by Maryland law is a legal or equitable interest of the debtor under

§ 541(a) is also a federal question. However, in the absence of a federal law of property, the existence and nature of the debtor's interest in tenants by entireties property are determined by nonbankruptcy law. *Report of the Commission on Bankruptcy Laws of the United States*, H.R.Doc. 93–137, 93rd Cong., 1st Sess. Pt. I at 194 (1973) [hereinafter "Bankruptcy Commission Report"]; 4 Collier on Bankruptcy ¶ 541.02 at 541–10 (15th ed. 1979). Accordingly, resolution of the issue of whether a debtor who holds property as a tenant by the entirety has an interest which would become an asset of the estate requires a careful examination of Maryland law concerning the nature of an tenancy by the entirety.

The common law view of the nature of an estate by the entirety in Maryland was summarized in *Marburg v. Cole*, 49 Md. 402, 411 (1878):

> By the common law of England, which is the law of this State, except where it has been changed or modified by statute, a conveyance to husband and wife does not constitute them joint tenants, nor are they tenants in common. They are in the contemplation of the common law, but one person, and hence they take, not by moieties, but the entirety. They are each seised of the entirety, and the survivor takes the whole. As stated by Blackstone, 'husband and wife being considered as one person in law, they cannot take the estate by moieties, but both are seised of the entirety, *per tout, et non per my*; the consequence of which is, that neither the husband nor the wife can dispose of any part without the assent of the other, but the whole must remain to the survivor'. 2 Bl.Com. 182. This has been the doctrine of the common law from an early period of its history . . . .

Due to the legal unity of husband and wife, each was deemed to own the entire indivisible estate while the marriage endured, and neither could convey his or her interests without the consent of the other. *Columbian Carbon Co. v. Kight*, 207 Md. 203, 206, 114 A.2d 28, 30 (1955); *McCubbin v. Stanford*, 85 Md. 378, 390, 37 A. 214, 214 (1897).

The right of survivorship possessed by each spouse, one of the estate's chief incidents, was indestructible except by the joint act of the husband and wife. *Jordan v. Reynolds*, 105 Md. 288, 293, 66 A. 37, 38 (1907). Due to the husband's position of dominance at common law, the husband had complete control and custody of the entirety property and his right to the income therefrom was subject to the claims of his creditors, provided that his wife's vested right of survivorship remained unaffected. *Columbian Carbon Co.*, 207 Md. at 206, 114 A.2d at 30; *Clark v. Wootton*, 63 Md. 113, 118–119 (1885). *See* Arnold, *Tenancy by the Entireties and Creditors Rights in Maryland*, 9 Md.L.Rev. 291, 294 (1948) [hereinafter cited as Arnold].

The Maryland Constitution and the Married Women's Property Acts altered the common law rule that gave the husband control of his wife's property during coverture. Arnold at 294. *See* Md.Const. art. III, § 43; Md.Ann.Code art. 45, §§ 1–2 (1971 Repl.Vol.). These Constitutional and statutory provisions gave the wife dominion over her own property and also deprived her husband's creditors of the right to attach the income derived from entirety property. Arnold at 294. Despite these changes, the concept of the legal unity of husband and wife and the indivisible nature of their interest in entirety property has been preserved. *See Dioguardi v. Curran*, 35 F.2d 431, 432 (4th Cir. 1929); *Annapolis Banking & Trust Co. v. Neilson*, 164 Md. 8, 9–10, 164 A. 157, 158–59 (1933). As stated in *Ades v. Caplin*, 132 Md. 66, 69, 103 A. 94, 95 (1918):

> The nature of this estate forbids and prevents the sale or disposal of it, or any part of it, by the husband or wife without the assent of both; the whole must remain to the survivor. The husband cannot convey, incumber, or at all prejudice, such estate, to any greater extent than if it rested in the wife exclusively in her own right. He has no such estate, as he can dispose of to the prejudice of the wife's estate. The unity of the husband and wife as one person, and the owner-

ship of the estate by that person, prevents the disposition of it otherwise than jointly.

While the estate exists, there can be no partition between the interests of the husband and wife. *See Jordan v. Reynolds*, 105 Md. at 294, 66 A. 37 at 38–39. In addition, while the estate exists, the spouses share equally in the income from property held as tenants by the entireties. *Whitelock v. Whitelock*, 156 Md. 115, 143 A. 712 (1928); *Masterman v. Masterman*, 129 Md. 167, 98 A. 537 (1916).

 With regard to the debtor's legal or equitable interests in property which he holds as a tenant by the entirety, the court concludes from this history of the development of the estate by the entireties in Maryland that the debtor has several legal and equitable interests in such property. The debtor has an *in futuro* expectancy based upon his right of survivorship—an expectation of the ownership of the whole of the property. Although the event of survivorship may be contingent and uncertain, the *right* to that survivorship interest is itself a present interest and not a future contingent right. Craig, *An Analysis of Estates by the Entirety in Bankruptcy*, 48 Am.Bankr.L.J. 255, 256 (1974). In addition to the debtor's present right of survivorship, the court finds that the debtor has an undivided, indivisible present right to the use, possession, and income from his tenants by the entireties property, *Pitsenberger v. Pitsenberger*, —— Md. ——, 410 A.2d 1052 (1980), however as the Supreme Court noted in discussing estates by entireties in Maryland, these present interests of the debtor are "hedged about at all points by the equal rights of [his spouse]." *Tyler v. United States*, 281 U.S. 497, 504, 50 S.Ct. 356, 359, 74 L.Ed. 991 (1930). These *in esse* legal and equitable interests of the debtor in use, possession, income, and survivorship are the subject of the court's inquiry with respect to the scope of § 541(a).

The recommended method for interpreting the legislative history of the Code is to begin with the most recent statement of authority and to delve backward through the legislative process. Appendix 2 Collier on Bankruptcy at xxvi (15th ed. 1979). Consequently, in determining the legislative intent in enacting § 541(a)(1) and the scope of that section, the court first considers that Senator Dennis DeConcini in his floor statement on October 5, 1978, and Representative Don Edwards in his floor statement on September 28, 1978, in clarifying § 541(a)(7), in identical statements, both noted that:

> The addition of this provision by the House amendment merely clarifies that section 541(a) is an all-embracing definition. . . . However, only the debtor's interest in such property becomes property of the estate.

124 Cong.Rec. S 17403, S 17413 (daily ed. Oct. 6, 1978) (remarks of Sen. Dennis DeConcini); 124 Cong.Rec. H 11047, H 11096 (daily ed. Sept. 28, 1978) (remarks of Rep. Don Edwards). Congressman Edwards further discussed both the meaning of "property" and the broad scope of § 541. With regard to the absence of a definition in § 102 of the Code, he remarked that "[a]lthough 'property' is not construed in this section, it is used consistently throughout the Code in its broadest sense. . ." *Id.*, at H. 11090. Representative Edwards added "[t]hus, as section 541(a)(1) clearly states, the estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. To the extent such interest is limited in the hands of the debtor, it is equally limited in the hands of the estate. . . ." *Id.* at H. 11096.

Additional comments further demonstrate the clear Congressional intent to effectuate such a broad and sweeping scope to § 541(a)(1) that it would encompass property of all kinds, including the debtor's interests in entirety property of the kind recognized in Maryland. In the Senate Report of the Judiciary Committee to accompany S. 2266 filed by Senator DeConcini on July 14, 1978, the Committee emphasized that "[t]he scope of this paragraph is broad" and that "[i]t includes all kinds of property" in which the debtor has an interest. Senate Report,

S.Rep. 95–989, *supra* at 83. The Senate Committee stressed that § 541(a)(1) "includes as property of the estate all property of the debtor, even that needed for a fresh start." *Id.* The Senate bill, S. 2266, differs from the House bill, H.R. 8200, only with respect to style. The above comments in the Senate Report basically track verbatim those comments made in the earlier House Report of the Judiciary Committee to accompany H.R. 8200, as reported, filed by Congressman Don Edwards on September 8, 1977. *Id.*, at 82–84; House Report, H.R. Rep. 95–595, *supra* at 367–69.

The House Judiciary Committee in its Report addressed the issue of whether the debtor's interest in entireties property is property of the estate when it stated:

> The bill also changes the rules with respect to marital interests in property. Interests in the nature of dower and curtesy will not prevent the property involved from becoming property of the estate, nor will it prevent sale of the property by the trustee. With respect to other co-ownership interest, such as *tenancies by the entirety*, joint tenancies, and tenancies in common, the bill does not invalidate the rights, but provides a method by which the estate may realize on the value of the debtor's interest in the property while protecting the other rights. The trustee is permitted to realize on the value of the property by being permitted to sell it without obtaining the consent or waiver of rights by the spouse of the debtor or the co-owner, as may be required for a complete sale under applicable State law. The other interest is protected under H.R. 8200 by giving the spouse a right of first refusal at a sale of the property, and by requiring the trustee to pay over to the spouse the value of the spouse's interest in the property . . .

House Report at 177, U.S.Code Cong. & Admin.News 1978 at 6137. (Emphasis added.) The debtor finds significance in the fact that the detailed Senate Report, issued subsequent to the House Report, makes no mention whatsoever of the tenancy by the entirety problem. The court assigns no special significance to this absence since the positions taken by Congressman Edwards and Senator DeConcini in their floor statements are consistent with the position espoused in the House Report.

The origin of the statement in the House Report and the final point of investigation for determining the legislative intent in enacting § 541 and the scope of that section is the Bankruptcy Commission Report, *supra*, Pts. I and II. The Bankruptcy Commission was established by Congress in 1970 to "study, analyze, evaluate and recommend changes" in the bankruptcy laws. Appendix 2 Collier on Bankruptcy at vii (15th ed. 1979). In 1973, the Bankruptcy Commission filed its report consisting of a summary of its recommendations, a draft statute, and explanatory notes to the statute. This draft statute was the focus for all subsequent activity surrounding the revision of the bankruptcy laws, until the introduction on January 4, 1977, of H.R. 6, the immediate precursor of the bill that ultimately became the Code. The Commission recommended that all property in which the debtor had an interest as of the date of the filing of the petition be considered property of the estate subject to administration. Bankruptcy Commission Report, Pt. I at 192. Such interests would also include an interest of the debtor in an estate by the entirety. Under § 4–601(a)(1) of the Bankruptcy Commission's proposed statute, "the undivided interest of a spouse who is a debtor in a case under the [proposed] Act is property of the estate." *Id.*, Pt. I at 195 n. 3b. The second part of the Commission's Report, in a note accompanying this particular section of the proposed statute, reiterates the clear intent that the estate of the debtor is to include all property owned by the debtor including "undivided interests in property." *Id.*, Pt. II at 149 n. 2.

From the Bankruptcy Commission Report, to the House and Senate Judiciary Committee Reports, to the final floor statements in Congress, the consistent, unequivocal legislative intent with respect to § 541(a)(1) is that the estate encompasses all property of whatever nature and wher-

ever situate, in which the debtor has an interest at the time of the commencement of the case including the debtor's undivided interest—present interests in the use, possession, income, and right of survivorship—in property which he holds as a tenant by the entirety. This conclusion is further supported by several comparisons to be made between § 541(a)(1) of the Code and § 70(a) of the Bankruptcy Act.

■ Section 70(a) defines the property of the estate under the Bankruptcy Act, which dealt with concepts such as title, alienability, and transferability. Section 70(a)(5) provides that:

> The trustee of the estate of a bankrupt . . . shall . . . be vested . . . with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located . . . (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded or sequestered . . . .

11 U.S.C. § 110(a)(5). Under § 70(a) where state law is such that entirety property can neither be transferred by either spouse acting alone nor subjected to judicial process to satisfy the claims of the individual creditors of one spouse, the bankrupt spouse's interest in entirety property did not vest in the trustee of the individual spouse and therefore did not become an asset of the estate in bankruptcy. *Reid v. Richardson*, 304 F.2d 351, 353 (4th Cir. 1962); *Phillips v. Krakower*, 46 F.2d 764, 765 (4th Cir. 1931); *Dioguardi v. Curran*, 35 F.2d at 432 (applying Maryland law). Consequently under the Act, property owned by a bankrupt and his nonbankrupt spouse as tenants by the entirety under Maryland law remained undisturbed by proceedings in bankruptcy. The court first notes that § 541(a) does not contain the transferability prerequisites present in § 70(a). As a result, § 541(a)

does not restrict interests in entireties property and other non-transferable interests from becoming assets of the estate, whereas the previous standards established by § 70(a), as applied to entireties estates in Maryland, purposefully excluded interests in entireties property from becoming assets of the estate.

■ Secondly, under § 70(a), property which is held to be exempt did not become a part of the estate in bankruptcy and title to such property would never vest in the trustee. However, § 541(a)(1) includes "all legal or equitable interests in property" including property of the debtor needed for a fresh start. House Report at 176, 368; Senate Report at 82. The exemption section of the Code, section 522, begins "[n]otwithstanding section 541 of this title, an individual debtor may exempt from property of the estate . . . ." Consequently, under the Code, even property held to be exempt will initially become property of the estate and will remain in the estate until such time as the exemption is taken. Since the debtor *may* exempt property, if the property otherwise subject to an exemption is not so exempted from the estate by the debtor, it will remain property of the estate subject to administration. This circumstance is particularly illustrative of the Congressional intent to create an all-encompassing, all-embracing estate in bankruptcy through the broad and sweeping scope and effect of § 541.

The approach with respect to the creation of the estate is significantly different under the Code than it was under the Act. Section 70(a) of the Act is a statute of inclusion, whereas § 541(a) of the Code is a statute of exclusion. Section 70(a) creates the estate in bankruptcy under the Act and proceeds to explicitly list the property which will fall into the estate and the extent to which that property is includable within the estate. The definition of what is to be included in the estate under the Code, on the contrary, is extremely broad with only two exclusions. Section 541(a) creates the estate in bankruptcy comprised of all property, wherever located, "[e]xcept as provided in subsections (b) and (c)(2) of this

section . . . ." [1] These provisions demonstrate that when Congress intended to exclude property from the estate, it carefully indicated this intention. There is no exclusion for interests in entirety property in the Code. Although Congress could have provided for a laundry list of what property would be included in the estate—the approach evident in § 70 and the approach taken in the Bankruptcy Commission Report—this line of thinking was rejected by Congress due to the fear that ambiguity would be created by omitting certain property intended to be part of the estate.

The debtor contends that if § 541(a)(1) were all-inclusive so as to incorporate in the estate the debtor's undivided interest in entirety property, then there would be no need for § 541(a)(2) which provides that the debtor's interest in community property is property of the estate. The court is of the opinion that § 541(a)(2) [2] is merely a further clarification of the broad scope of § 541(a)(1). The court notes that the legislative history to § 541(a)(7),[3] which provides

that after-acquired property of the debtor is property of the estate, states that this subsection is for further clarifying that the scope of § 541(a) is broad and all-embracing. 124 Cong.Rec.H. 11096 (Sept. 28, 1978); 124 Cong.Rec.S. 17,413 (Oct. 6, 1978). Since § 541(a)(7) clarifies § 541(a) as all-encompassing, § 541(a)(2) is similarly viewed as clarifying the broad spectrum of the estate in bankruptcy. The parameters of § 541(a) are established by the clear language of that section and § 541(a)(2) merely falls within those parameters.

Sections 70(a) and 541(a) can also be compared with regard to their respective provisions for property which the debtor acquires within six (6) months after the filing of the petition. Section 70(a) [4] provides that if an interest in entireties property becomes transferable by the bankrupt within six (6) months after the filing of a petition, that property becomes property of the estate. Section 541(a)(5) [5] of the Code is the successor to the provisions contained in § 70(a) of the Act dealing with the

1. Subsections (b) and (c)(2) of section 541 list the only two types of interests that do not become part of the estate. They are:
(b) Property of the estate does not include any power that the debtor may only exercise solely for the benefit of an entity other than the debtor.
(c)(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

2. Section 541(a)(2) provides:
§ 541. Property of the estate.
(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:
. . . .
(2) All interest of the debtor and the debtor's spouse in community property as of the commencement of the case that is—
(A) under the sole, equal or joint management and control of the debtor; or
(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

3. Section 541(a)(7) provides:
§ 541. Property of the estate.

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:
. . . .
(7) Any interest in property that the estate acquires after the commencement of the case.

4. Section 70(a) provides in pertinent part:
All property, wherever located except insofar as it is property which is held to be exempt, which vests in the bankrupt within six months after bankruptcy by bequest, devise or inheritance shall vest in the trustee and his successor or successors, if any, upon his or their appointment and qualification, as of the date when it vested in the bankrupt, and shall be free and discharged from any transfer made or suffered by the bankrupt after bankruptcy.
All property, wherever located, except insofar as it is property which is held to be exempt, in which the bankrupt has at the date of bankruptcy an estate or interest by the entirety and which within six months after bankruptcy becomes transferable in whole or in part solely by the bankrupt shall, to the extent it becomes so transferable, vest in the trustee and his successor or successors, if any, upon his or their appointment and qualification, as of the date of bankruptcy.

5. Section 541(a)(5) provides:
An interest in property that would have been property of the estate if such interest had been

debtor's after-acquired interests in property. However, § 541(a)(5) contains no such provision pertaining to entireties property. Is this then to mean that under the Code this after-acquired transferable interest would escape from inclusion as an asset in the estate? Obviously, such a result would be inconsistent with the explicit intent of Congress to make § 541(a) "all-embracing". The legislative history makes it clear that Congress did not intend to diminish the estate of the debtor when drafting § 541. Congress must have realized and intended that § 541(a)(1) already included the undivided interest of the debtor in entireties property and therefore concluded that it would be needless and ambiguous to include such an interest in § 541(a)(5). These various comparisons between § 70(a) of the Bankruptcy Act and § 541(a)(1) of the Code lend ample support to the conclusion that § 541(a)(1) includes in the estate the debtor's undivided interest in the property he holds as a tenant by the entirety.

Further support for the conclusion that the undivided interest of the debtor in entireties property is property of the bankruptcy estate under § 541(a)(1) can be gleaned from an analysis of § 522(b)(2)(B). That section provides that:

> Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate either . . (B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

The statute permits a debtor, in choosing the "state exemptions", to exempt from property of the estate his interest in entireties property under certain conditions. The conclusion is inescapable that in order for the debtor to claim as exempt his interest in tenants by the entireties property under

§ 522(b)(2)(B), this interest must first have come into the estate through § 541(a)(1). The clear Congressional intent is that the interaction of sections 541(a)(1) and 522(b)(2)(B) be given this effect. This construction inevitably results in the conclusion that the debtor's undivided interest in tenants by the entireties property is property of the estate; for the court to hold otherwise would render § 522(b)(2)(B) meaningless.

The trustee contends that the filing of the petition acts as an immediate severance of the estate by the entireties since the debtor's interest passes immediately to the trustee thereby severing the time honored unities of time, title, identity of interest, and possession, necessary to preserve the estate by the entireties. The court disagrees. The legislative history consistently takes the position, ultimately enacted in § 541(a)(1), that it is the debtor's undivided interest in tenants by the entireties property which becomes the property of the estate. It is the debtor's undivided interest as it exists immediately prior to the filing of the petition that passes to the estate. There is no severance of the unities when the debtor's interest passes to the estate. The trustee merely obtains and retains custody of the debtor's undivided interest consisting of the same unities, intact and unaltered, as they existed immediately prior to the filing of the petition, until such time as that interest, still intact and unaltered, is exempted from the estate under § 522(b)(2)(B), provided such exemption is available and properly taken by the debtor. The trustee cites no authority in support of the concept of severance, nor is it mentioned in the legislative history. In addition, if there were such a severance, the tenancy by the entireties, as recognized in Maryland, would become a tenancy of a different kind. Such a result would nullify the exemption for the debtor's interest in tenants by the entireties property provided under § 522(b)(2)(B) since a tenancy by the

an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—

(A) by bequest, devise, inheritance;

(B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree; or

(C) as a beneficiary of a life insurance policy or of a death benefit plan.

entirety would no longer exist. Precisely as § 522(b)(2)(B) should not be rendered impotent by holding that the debtor's undivided interest is not property of the estate, it should not be rendered meaningless by holding that there is no longer any estate by the entireties upon which it can operate. Just as it would confound common sense to provide for an exemption for the debtor's interest in tenants by the entireties property if such interest were not in the estate, it would similarly distort all logic to provide for such an exemption if the interest in the tenancy as it existed immediately prior to filing of the petition no longer exists *due to* the filing of the petition. Moreover, the trustee's construction completely ignores the express terms of § 522(b)(2)(B), which refer to the debtor's undivided interest in entireties property which the debtor held "*immediately before* the commencement of the case." Under the express terms of this provision the moment of significance is the instant immediately before the commencement of the case; it is the debtor's interest in entireties property at that time which becomes the property of the estate and which may be the subject of the exemption provided in § 522(b)(2)(B).

For all of the above reasons, the court concludes that the debtor's undivided interest in property which he held immediately before the commencement of the case as a tenant by the entirety with his nonbankrupt spouse, as that tenancy is presently constituted under Maryland law, is property of the estate in bankruptcy under the Code, that the interest is subject to administration under § 541(a)(1), and that the tenancy by the entirety is not severed by the filing of a petition under the Code.

II. IF THE DEBTOR'S INTEREST IN PROPERTY AS A TENANT BY THE ENTIRETY UNDER MARYLAND LAW IS PROPERTY OF THE ESTATE UNDER SECTION 541(a) OF THE CODE, MAY IT BE EXEMPTED BY THE DEBTOR FROM PROPERTY OF THE ESTATE UNDER 11 U.S.C. § 522(b)(2)(B).

Having concluded that the debtor's present interest in tenants by the entireties property under Maryland law is property of the estate under § 541(a)(1), the court turns its attention to § 522(b)(2)(B) of the Code to determine whether such interest may be exempted from the estate under that section.

Section 522, entitled "Exemptions", provides in pertinent part that:

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate . . .

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place; and

(B) any interest in property in which the debtor had, *immediately before the commencement of the case, an interest as a tenant by the entirety or* joint tenant *to the extent that such interest* as a tenant by the entirety or joint tenant *is exempt from process under applicable nonbankruptcy law.* (Emphasis supplied.)

Mr. Ford in his Voluntary Petition elected to take property out of the estate in bankruptcy by declaring them as exempt pursuant to the so-called "state exemptions" under § 522(b)(2). The major exemptions sought by the debtor are those in which he holds interests as a tenant by the entirety under the provisions of subparagraph (B) of § 522(b)(2). In determining to what extent the debtor's interest in tenants by the entireties property is exempt from process under applicable nonbankruptcy law, the court will examine the legislative history concerning § 522(b)(2)(B) and construe the terms of this statute.

The legislative intent in enacting § 522(b)(2)(B) is revealed through changes

in the proposed statutes reflecting contrasting philosophical views and through statements made which precipitated changes in the draft laws. The explanatory note in the House Report simply repeats the essence of the language of the proposed statute in the draft bill H.R. 8200 and which was ultimately enacted in § 522(b)(2)(B):

He may also exempt an interest in property in which the debtor had an interest as a tenant by the entirety or joint tenant to the extent that interest would have been exempt from process under applicable nonbankruptcy law.

House Report, *supra* at 360, U.S.Code Cong. & Admin.News 1978, at p. 6316. The Senate Report contains identical language. Senate Report, *supra*, at 75. However, the House Report does explain the rationale for the enactment of the present system of alternative exemptions.

Though exemption laws have been considered within the province of State law under the current Bankruptcy Act, H.R. 8200 adopts the position that there is a Federal interest in seeing that a debtor that goes through bankruptcy comes out with adequate possessions to begin his fresh start. Recognizing, however, the circumstances do vary in different parts of the country, the bill permits the States to set exemption levels appropriate to the locale, and allows debtors to choose between the State exemptions and the Federal exemptions provided in the bill. Thus, the bill continues to recognize the States' interest in regulating credit within the States, but enunciates a bankruptcy policy favoring a fresh start.

House Report, *supra*, at 126, U.S.Code Cong. & Admin.News 1978, at p. 6087.

The debtor in his initial Memorandum quotes extensively from the colloquy among Congressman M. Caldwell Butler, Professor Stefan A. Riesenfeld, and Bernard Shapiro, Esq., which is reported in hearings before the Subcommittee on Civil and Constitutional Rights of the Committee on the Judiciary, House of Representatives, 94th Cong., 2nd Sess., on H.R. 31 and H.R. 32, pt. 3, pp. 1519–24 (1976) [hereinafter cited as "House Hearings"].

The colloquy involved various areas of concern such as the effect of bankruptcy on the nonbankrupt spouse's interest in tenants by the entireties property and the problems caused by the differing nature of the estates by the entireties as recognized among the various States. At the time when this discussion occurred, the bill before the Subcommittee was H.R. 31, the Bankruptcy Commission bill, which did not include any state exemption option. The Commission had recommended a flat repeal of the applicability of all state exemption laws in federal bankruptcy proceedings,[6] and accordingly, § 4–503(a) of the Commission's proposed statute simply provided that a debtor "shall be allowed exemptions of property as provided in this section." The proposed statute then went on to set forth only the new federal exemptions that would be applicable. In an explanatory note to a proposed exemption for the debtor's homestead, the Bankruptcy Commission stated that:

The reference to nonbankruptcy law to determine the exemptions is abandoned to eliminate diversity, reduce the amount

---

**6.** The Commission recommends that, in cases under the Bankruptcy Act, the Act prescribe the exemptions available and that other state and federal laws granting or restricting exemptions be superseded.

Bankruptcy Commission Report, *supra*, Pt. I, at 170.

a. *Supersession of State Law.* The present Act relies on state and federal law, other than the Bankruptcy Act, for a determination of what property is exempted. This was not always true; initially, federal bankruptcy legislation prescribed the exemptions. This reference to nonbankruptcy law to determine the exemp-

tions has worked unfairly; it has, contrary to the goals of federal bankruptcy legislation, allowed some creditors to be preferred over others and caused substantial nonuniformity. It has probably also been responsible for some of the dissatisfaction with the bankruptcy process. For example, in states where there are excessive exemptions, creditors have difficulty understanding a system that allows a debtor to retain property of a value of several hundred thousand dollars, while at the same time obtaining a discharge which precludes recovery of the creditors' claims. *Id.*, at 171.

of litigation having no direct relationship to the policy underlying exemptions, and because state exemption laws seem generally archaic and unduly generous in some states and exceedingly niggardly, particularly as to urban residents, in others. . . .

. . . . [T]he fact a debtor could claim additional or less property under state or other federal law is immaterial.

Bankruptcy Commission Report, *supra*, Pt. I, at 127–28 nn. 1 and 2. This proposal with respect to the status of state exemptions was severely criticized and led not only to the compromise of the allowance of the option to choose between Federal or State exemptions, but also led to the specific provision embodied in § 522(b)(2)(B).

After the House Hearings in 1976, H.R. 31 was amended. When H.R. 6 (the predecessor to H.R. 8200) was introduced the following year, it provided an exemption for "property in which the debtor has an interest as a tenant by the entirety," and when H.R. 6 became H.R. 8200 (the ultimate bill) the present language contained in § 522(b)(2)(B) was incorporated. An inference which may be drawn is that the inclusion in H.R. 6 of the exemption for the debtor's interest in property which he holds as a tenant by the entirety was to give effect to Congressman Butler's view that it would "be better to simply identify the situation and leave it to the traditional methods of disposal or handling by the States[.]" House Hearing, Pt. 3 at 1524. The court also infers that when the present and more definitive language was incorporated into H.R. 8200, § 522(b)(2)(B), it was inserted in order not to exempt tenancies by the entireties in States, such as New York and New Jersey, where a creditor of one spouse is able to levy on that spouse's interest.

■ In view of the Congressional intent to provide an exemption for the debtor's interest in tenants by the entireties property under State law, the court must consider the requirements which must be met under § 522(b)(2)(B) in order for the exemption to be available. In so doing the court must first consider the meaning of "applicable nonbankruptcy law" upon which such an exemption would be based. The trustee argues that § 522(b)(2)(B) grants an exemption for tenancies by the entirety only if such tenancies are exempt from process under a state exemption statute rather than the common law of the State. This position is wholly without foundation. The trustee cites *Smalley v. Laugenour*, 196 U.S. 93, 25 S.Ct. 216, 49 L.Ed. 400 (1905), in which the Court was asked to resolve an exemption claimed under a homestead statute of the State of Washington. The trustee quotes the Court's statement that "[t]he rights of a bankrupt to property as exempt are those given him by the state statutes, and if such exempt property is not subject to levy and sale under those statutes, then it cannot be made to respond under the act of Congress." 196 U.S. at 97, 25 S.Ct. at 217. The trustee reads this statement as excluding the possibility of an exemption which has been established by judicial decisions and is not a creature of statutory law.

The court does not agree with the trustee's view. The Supreme Court in *Eaton v. Boston Trust Co.*, 240 U.S. 427, 36 S.Ct. 391, 60 L.Ed. 723 (1916) held that a trust for life with income therefrom did not pass to the trustee under § 70(a)(5) of the Bankruptcy Act based upon Massachusetts' common law that such trusts are valid against creditors, assignees in insolvency, and trustees in bankruptcy. Mr. Justice Holmes concluded that:

> The policy of the Bankruptcy Act is to respect state *exemptions*, and until the Massachusetts *decisions* shall have gone farther than they yet have we are not prepared to say that the present bequest is not protected by the Massachusetts rule. (Emphasis supplied.)

*Id.*, at 429, 36 S.Ct. at 392. No state statute was involved in *Eaton*, and yet the Supreme Court respected the state exemption created by the common law of the State.

The trustee also cites *White v. Stump*, 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301 (1924) and *Myers v. Matley*, 318 U.S. 622, 63 S.Ct. 780, 87 L.Ed. 1043 (1943) for the prop-

osition that the court in determining an exemption under state law must look to the property that is claimed to be exempt and not at the manner in which the debtor holds an interest in that property. In *White*, the Court in reviewing an Idaho homestead exemption statute held that the statute required that a declaration of land as a homestead had to be executed, acknowledged, and recorded prior to an adjudication in order to create the exemption since prior to that time the land would be subject to levy, and after adjudication the land would pass to the trustee who would have the rights of a creditor with a levy. The Court in *Myers* in reviewing a claim of exemption under a Nevada homestead exemption statute looked to state decisions interpreting the statute and held that a debtor in Nevada was entitled under settled law of the State to an exemption if he recorded his declaration of homestead before the actual judicial sale. These cases involve constructions of particular state statutes which create specific exemptions, but the cases do not by any interpretation stand for the proposition that only state statutory law can create exemptions.

In further consideration of the trustee's effort to restrict the phrase "applicable nonbankruptcy law" in section 522(b)(2)(B) to statutory law, the court has examined the phrases "applicable nonbankruptcy law" and "applicable law" as used in other sections of the Code. This examination clearly demonstrates that the limitation of this phrase to refer to statutory law would be inconsistent with the other uses of this phrase in the Code. *See, e. g.*, 11 U.S.C. §§ 365(c)(1)(A), 365(e)(1), 365(e)(2)(A), 365(f)(1), 365(f)(3), 365(h)(1), 502(b)(1), 510(a), and 541(c)(2), where these phrases clearly include the common law. As a particular example, § 541(c)(2), set out in footnote 1, *supra*, preserves the restrictions under applicable nonbankruptcy law on the transfer of a spendthrift trust, which is purely a creature of the common law. Moreover, where the Code specifically wishes to restrict the use of a "law" to "statutory" law, it expressly does so. *See, e. g.*, 11 U.S.C. §§ 101(38) and 724(d).

The trustee refers this court to no instance, and this court has found none, where the statutes of any State create an exemption for the debtor's interest in tenants by the entirety property. In the apparent absence of any such statute, if the exemption provided by § 522(b)(2)(B) were construed to refer only to such an exemption which is provided by state statutory law, there would be none, and therefore § 522(b)(2)(B) would be rendered meaningless. The presumption against the construction of a statute that would render the statute meaningless or ineffective, *United States v. Powers*, 307 U.S. 214, 217, 59 S.Ct. 805, 807, 83 L.Ed. 1245 (1939); *Bird v. United States*, 187 U.S. 118, 124, 23 S.Ct. 42, 44, 47 L.Ed. 100 (1902), has not been overcome by the trustee. The court, for the above reasons, is of the opinion that the applicable nonbankruptcy law, under which the court is to determine the extent to which the debtor's interest as a tenant by the entirety is exempt from process, is not restricted to Maryland statutory law and includes Maryland common law.

The court's inquiry now turns to a determination of the meaning of the phrase "exempt from process" and the extent to which under Maryland common law the debtor's interest in estates by the entireties is exempt from process. The trustee proposes that the term "exemption" or "exempt" is a word of art and cites cases purportedly showing the historical contexts in which the word has been used. The debtor, on the other hand, proposes that the term "exempt from process" is intended to mean simply that the property is not subject to reach by the creditors of the bankrupt debtor, and suggests that the term "immune" may have better expressed Congress' intent.

The issue involved in this case is not what requirements must be met in order to fall within the terms of a specific exemption statute, but the nature and meaning of the term "exemption" or "exempt" as used in the phrase "exempt from process". The cases cited by the trustee are, therefore, inappropriate to the purpose of establishing the definition of the term "exempt" or "ex-

emption". The authorities cited by the trustee do not deal with the definition of the term "exempt" or "exemption", but instead deal with the specific requirements which must be met by the debtor in order to avail himself of an exemption under a particular exemption statute. They simply hold that the failure of the debtor to meet the requirements under the particular exemption statute would preclude him from availing himself of that specific exemption. Consequently, the court views neither "exemption" or "exempt" as a word of art nor the authorities cited by the trustee as in any manner whatsoever establishing the proposition that they are words of art.

■■■ In common everyday usage, the word "exemption" is synonymous with "immunity". *Webster's New Ideal Dictionary* (G. & C. Merriam Co., Springfield, Mass., 1978) defines "exemption" in part as:

the act of exempting: the state of being exempt: immunity.

*Id.*, at 175. The court finds no basis to establish any Congressional intent to make any distinction between the word "exempt" and the word "immune" and places no special significance on the use of the words "exempt from process" instead of "immune from process" in § 522(b)(2)(B).

The inquiry now turns to the extent to which the debtor's interest is exempt/immune from process under Maryland common law.

■■■ The exemption or immunity from process of tenancies by the entirety arises not from statutory law but has its origins in the common law. *See, e. g., Phillips v. Krakower*, 46 F.2d 764, 765 (4th Cir. 1931); *Jordan v. Reynolds*, 105 Md. at 294, 66 A. at 38–39. It has long been the settled law of Maryland that property held by the entirety is not subject to the claims of individual creditors of either spouse, *Phillips*, 46 F.2d at 765; *Jordan*, 105 Md. at 293–94, 66 A. at 38; *Annapolis Banking & Trust*, 164 Md. at 9–10, 164 A. at 158–59, and that in order for a joint creditor to execute upon entireties property to satisfy obligations due him from both spouses, the husband's interest must be joined with his wife's interest in

entireties property. *Jordan*, 105 Md. at 293, 66 A. at 28.

A comparison between the language used in 11 U.S.C. § 522(b)(2)(A) and that used in § 522(b)(2)(B) is significant. Section 522(b)(2)(A), in dealing with general exemptions, provides:

(2)(A) any *property* that is exempt under Federal law . . . or State or local law that is applicable on the date of the filing of the petition . . . (Emphasis supplied.)

Section 522(b)(2)(B), in dealing specifically with tenancies by the entireties and joint tenancies provides:

(2)(B) any *interest in property* in which the debtor had, *immediately before the commencement of the case*, an interest as a tenant by the entirety . . . to the *extent* that such interest as a tenant by the entirety . . . is exempt from process under applicable nonbankruptcy law. (Emphasis supplied.)

Under § 522(b)(2)(B) it is not the tenancy by the entirety property itself which becomes a part of the estate, but only the interest which the debtor held in such property immediately before the commencement of the case. We have held that only Mr. Ford's interest in entireties property is property of the estate under § 541(a)(1). The asset which becomes a part of the estate is only his interest as it existed immediately before the commencement of the case. The court has also held that a severance of the estate by entireties does not occur as a result of Mr. Ford's present interest in entireties property becoming an asset of the estate. As a consequence, what passed to the estate and became an asset of the estate was Mr. Ford's individual undivided interest as a tenant by the entirety. This interest alone is not subject to the claim of either individual creditors of Mr. Ford or joint creditors of both Mr. Ford and his wife. With regard to Mr. Ford's individual creditors, they could neither have levied upon nor sold his individual undivided interest in the entirety property (which is the asset of the estate) or the property

itself to satisfy obligations due solely from Mr. Ford. With regard to joint creditors of both Mr. Ford and his wife, they could have levied upon and sold only the entireties property consisting of the entire, combined, and unsevered interests, as a unity, of both Mr. and Mrs. Ford, but could not have levied upon or sold either Mrs. Ford's individual undivided interest or Mr. Ford's individual undivided interest. In order for joint creditors to execute upon entireties property, the husband's interests must be joined with the interests of the co-tenant wife. As a result, the debtor's interest in entireties property, standing alone, is unavailable to the joint creditor. Therefore, the interest of the debtor in tenancy by the entireties property which became an asset of the estate is exempt from process under Maryland law. Since the debtor's interest in entireties property is exempt from process by both his individual and joint creditors under Maryland law, the debtor's interest in property which he holds as a tenant by the entirety may be exempted from the estate by Mr. Ford under § 522(b)(2)(B).

 Under the decision reached by this court as set out above, the ultimate effect of the Code on tenants by the entireties property in Maryland remains the same as it did under the Act. Presuming that the debtor elects to exempt his interest in tenants by the entireties property, the Code, as construed by this decision, in no way affects the rights of a joint creditor of both spouses as those rights existed under the Act. As in the past, a joint creditor may, prior to the discharge of the bankrupt spouse from the debt of such creditor and upon the lifting of the stay, proceed to obtain judgment, execute or foreclose upon property owned by both the bankrupt and the non-bankrupt spouse as tenants by the entireties. *Phillips v. Krakower, supra; Davison v. Virginia National Bank*, 493 F.2d 1220 (4th Cir. 1974). *See also In re Seats*, 537 F.2d 1176 (4th Cir. 1976).

## A. EXEMPTION WHERE NO EQUITY EXISTS

 The next contention raised by the trustee is that the debtor's furniture, and the two automobiles may not be exempted since each is subject to a security interest and, in each instance, the secured debt exceeds the market value of the property. However, property may be exempted even if it is subject to a lien. House Report at 360. In fact, the Code contemplates by its terms under § 522(f) that under specific circumstances liens against certain property may be avoided to the extent that the lien impairs an exemption under § 522(b), evidencing the clear intent that the debtor should have full use of the available exemptions. 3 Collier on Bankruptcy, ¶ 522.04 at 522–14 (15th ed. 1979). The court concludes that neither the existence of a lien nor the lack of equity in the debtor prevents the taking of an available exemption.

## B. EXEMPTION AS TENANTS BY THE ENTIRETIES PROPERTY WHERE TITLE IS HELD BY ONE SPOUSE ALONE.

The trustee has objected to the debtor's claim that the 1974 Chrysler Newport is held by the debtor as a tenant by the entirety. The trustee contends that the aforesaid automobile is titled exclusively in the name of the debtor, and is therefore, not held as a tenant by the entirety. This assertion stands uncontroverted by the debtor on the face of the pleadings. However, no proof or evidence has been produced to aid the court in resolving this issue. The certificate of title has not been produced, the stipulation entered into by the parties and introduced into evidence does not address this asset in any respect, and no testimony has been introduced regarding the intention of the parties when the vehicle was purchased. Consequently, the court does not have sufficient facts before it to express an opinion as to whether this asset is the sole property of the debtor or held as a tenant by the entirety.

## C. TRUSTEE'S CONTENTION OF ADVERSE AFFECT OF RULING THROUGH MASS CONVERSIONS OF PROPERTY TO TENANTS BY THE ENTIRETIES.

 The trustee has expressed concern that should the court be of the opinion that

the debtor's interest in tenants by the entireties property is exempt under § 522 (b)(2)(B), debtors will *en masse* convert property held individually into tenants by the entireties property immediately prior to filing and defraud creditors who may have otherwise been able to look to that property as a non-exempt asset of the estate. As under the Bankruptcy Act, the debtor under the Code is permitted to convert non-exempted property into exempt property before filing a bankruptcy petition. This eleventh hour practice is not fraudulent as to creditors absent more than the act itself and permits the debtor to make full use of the exemptions to which he is entitled under the law. House Report at 361. *See generally*, 3 Collier on Bankruptcy ¶ 522.08[4] at 522–33—522–36 (15th ed. 1979). No allegations of any misconduct on the part of the debtor have been made in this action; hence the question of the propriety of the creation of the tenancies by the entireties present in this case is not before the court.

## D. TRUSTEE'S CONTENTION OF ADVERSE EFFECT OF RULING ON CONGRESSIONAL INTENT OF UNIFORMITY

In addition, the trustee has expressed the concern that the decision reached by this court would be contrary to Congressional intent for uniformity of the bankruptcy law. In view of the Code provision in § 522(b) allowing the debtor to make a choice in selecting either the federal exemptions under § 522(d) pursuant to § 522(b)(1) or the state exemptions as they exist pursuant to § 522(b)(2)(A) and (B), in view of the provision in § 522(b)(1) allowing the States to enact legislation prohibiting the citizens of that State from electing the federal exemptions, and in view of the wide divergence among the exemptions provided by the laws and decisions of the individual States, the court can find no clear Congressional intent for national uniformity with respect to exemptions.

## III. IF DEBTOR'S INTEREST IN PROPERTY AS A TENANT BY THE ENTIRETY UNDER MARYLAND LAW IS PROPERTY OF THE ESTATE, UNDER § 541(a) OF THE CODE, AND IS NOT EXEMPT UNDER § 522(b)(2)(B) OF THE CODE, DOES § 541(a), AS IMPLEMENTED BY SECTIONS 363(h) AND (j) DENY DUE PROCESS IN VIOLATION OF THE FIFTH AMENDMENT OF THE CONSTITUTION IF § 541(a) IS CONSTRUED TO APPLY RETROSPECTIVELY TO TENANCIES BY THE ENTIRETIES CREATED PRIOR TO THE ENACTMENT OF THE CODE.

Section 363(h) provides as follows:

(h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, immediately before the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

and section 363(j) provides that:

(j) After a sale of property to which subsection (g) or (h) of this section applies, the trustee shall distribute to the debtor's spouse or the co-owners of such property, as the case may be, and to the estate, the proceeds of such sale, less the costs and expenses, not including any compensation of the trustee, of such sale, according to the interests of such spouse or co-owners, and of the estate.

Having already concluded that the debtor's undivided interest in property held at the commencement of the case as a tenant by the entirety under Maryland law is property of the bankruptcy estate under § 541(a)(1), and having further concluded that the debtor's interest in tenants by the entireties property, as property of the estate, is exempted from the estate pursuant to § 522(b)(2)(B), as a result of the fact that this interest standing alone is exempt from process under Maryland common law, sections 363(h) and (j) do not become applicable or operative. Therefore, the court under the circumstances of this case does not reach the issue of the retrospective application of § 541(a)(1), as implemented by sections 363(h) and (j), to tenancies by the entireties created before the enactment of the Code allegedly constituting a violation of the Fifth Amendment due process rights of the debtor and the nonbankrupt spouse. The court is of the opinion that the results stated above would apply to all cases in Maryland based on facts as they exist in this case where only one spouse owning property as a tenant by the entirety has filed in bankruptcy and elected to take state exemptions.

It is not to be interpreted that the court, in holding as it has with respect to Maryland tenancies by the entireties, has rendered sections 363(h) and (j) meaningless. To the contrary, the court believes, without here deciding, that those sections may be applicable under a number of circumstances such as: in all States, including Maryland, where only one spouse files and, where not prohibited by state law, elects the federal exemptions pursuant to § 522(b)(1); in all States, like Maryland, where only one spouse files and, where state exemptions are elected but the debtor fails or neglects to take advantage of his right to exempt his interest in property held as a tenant by the entirety; in those States where state ex-

emptions are elected but, unlike Maryland, the incidents of the tenancy by the entirety correspond in material respects to a tenancy in common or joint tenancy in that the tenancy is severable by the act of one spouse, or the interest of one spouse in the tenancy is transferable by that spouse without the joint action of the other, or where the interest of one spouse is subject to levy and sale to satisfy his debts to his individual creditors[7]; in those States where only one spouse files and state exemptions are elected and where state law recognizes the tenancy by the entirety with respect to real property only and does not recognize this tenancy as existing in personalty.[8]

Upon the foregoing opinion, and for the reasons therein stated, it is hereby

ORDERED, that the interest which the debtor holds as a tenant by the entirety under Maryland law in the household goods, supplies, and furnishings, the set of encyclopedias, the 1973 Chevrolet Malibu, and the real property known as 1710 Windemere Avenue, Baltimore, Maryland 21218, as more fully detailed in the applicable schedules filed in this case, is property of the estate in bankruptcy pursuant to 11 U.S.C. § 541(a)(1), and to this extent the trustee's Amended Report of Exempt Property is sustained; and it is hereby further

ORDERED, that the debtor's interest as a tenant by the entirety under Maryland law in the personalty and realty set out in the above decretal paragraph, which became property of the estate in bankruptcy, is exempted from the estate in bankruptcy pursuant to 11 U.S.C. § 522(b)(2)(B), and to this extent the Amended Objection of the Debtor To Trustee's Determination of Exempt Property is sustained.

7. These situations may prevail in such states as Arkansas, New Jersey, New York and Oregon. See Craig, 48 Am.Bankr.L.J. at 258–59, 295–300.

8. Of the 24 jurisdictions which recognize a tenancy by the entirety, only 16 recognize such a

tenancy in personalty. See Craig, 48 Am. Bankr.L.J. at 259 n. 23. Maryland recognizes the tenancy by the entirety in both realty and personalty. See Bender v. Bender, 282 Md. 525, 534, 386 A.2d 772, 779 (1978).