## In re LITTLE.

(Circuit Court of Appeals, Seventh Circuit. April 11, 1905.)

No. 1,145.

BANKRUPTCY—SUCCESSIVE PETITIONS—TIME.

 Bankr. Act July 1, 1898, c. 541, § 59, 30 Stat. 561 [U. S. Comp. St. 1901, p. 3445], provides that any qualified person may file a petition to be adjudged a voluntary bankrupt; and section 4a (30 Stat. 547 [U. S. Comp. St. 1901, p. 3423]) declares that any person who owes debts, except a corporation, shall be entitled to the benefit of the act as a voluntary bankrupt. Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 [U. S. Comp. St. Supp. 1903, p. 411], makes it a ground for refusal of a discharge that the bankrupt has been previously discharged within six years. *Held,* that such limitation referred to the time between the first and second discharge, and not between the first discharge and the filing of the second petition, and hence it was immaterial to the right of a person to be adjudged an involuntary bankrupt that he had previously been discharged in bankruptcy within six years.

Petition for Revision of Proceedings of the District Court of the United States for the Northern District of Illinois, in Bankruptcy.

On September 22, 1898, Newton D. Little filed a petition in voluntary bankruptcy in the court below, and in that proceeding was on April 12, 1899, duly discharged of his debts. On June 10, 1904, he filed in the court below his second voluntary petition, upon which adjudication of bankruptcy passed June 17, 1904. On December 6, 1904, upon petition of a creditor of the bankrupt, the court below dismissed the bankruptcy proceeding upon the ground that the bankrupt had been granted a discharge within six years prior to the filing of his second petition in bankruptcy. The correctness of this ruling is challenged by the bankrupt by this petition to review the order of December 6, 1904, dismissing the second petition.

Thomas J. Peden, for petitioner.

Roland D. Whitman, for respondent.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

JENKINS, Circuit Judge. It is conceded that the bankrupt cannot obtain a second discharge before April 12, 1905, after a lapse of six years from his first discharge; but it is insisted that the bankruptcy law places no restriction upon one's right to file a second petition before the expiration of the six years. By the bankruptcy law of July 1, 1898, c. 541, § 59, 30 Stat. 561 [U. S. Comp. St. 1901, p. 3445], "any qualified person may file a petition to be adjudged a voluntary bankrupt." Section 4a of the act (30 Stat. 547 [U. S. Comp. St. 1901, p. 3423]) provides that "any person who owes debts, except a corporation, shall be entitled to the benefit of this act as a voluntary bankrupt." A "qualified person" of the statute is therefore one other than a corporation who owes debts. Section 14a of the act (30 Stat. 550 [U. S. Comp. St. 1901, p. 3427]) provides that the application for a discharge from debt can only be filed after the expiration of one month and within the next twelve months subsequent to the adjudication of bankruptcy, unless, for cause, the judge may extend the time not exceeding six months. By the original act the grounds of objection to a discharge did not include the objection that the applicant in voluntary proceedings had been granted a discharge within six years. That ground of objection was added by the amendment of February 5, 1903, c. 487, § 4, 32 Stat. 797 [U. S. Comp. St. Supp. 1903, p. 411]. The expression "within six years," as we think, measures the time between the first and second discharge, and not between the first discharge and the filing of the second petition in bankruptcy. The amendment establishes a ground for the denial of the petition for a discharge available to a creditor if he desires to prefer it. But in view of the unqualified right to become a voluntary bankrupt, and in the absence of any restriction placed upon that right, we see no reason to give to the amendment qualifying the right to a second discharge a greater restriction than its terms express. It is to be observed that a petition in bankruptcy contains no prayer for a discharge. It merely asks the court sitting in bankruptcy to take the property of the bankrupt and to distribute it ratably among creditors. The discharge from debt may follow within the time authorized by the statute, if the bankrupt has conformed to the law. That is an incident to the proceeding—a privilege granted to the bankrupt which may or may not be accorded to him, but, whether accorded or denied, in no way affects the rightful jurisdiction of the court to receive and distribute the estate of the bankrupt. It may well be that one in embarrassed circumstances, not entitled to a discharge, may desire that his estate be distributed ratably among all his creditors. Why should he be deprived of the right to invoke the court to carry out the fundamental principle of the bankruptcy act that "equality is equity," because for some reason he is not entitled to avail himself of the

privilege of a discharge which under certain circumstances the law grants him?

In the earliest days of bankruptcy law, the object was to relieve the debtor from arrest upon the delivery to the court of his estate, but the debt was not discharged. This dated from the time of Julius Cæsar. 2 Blackstone, Comm. 473. The English system of bankruptcy originated in 1542, under Henry VIII, but it was not until the time of Anne (4 Anne, c. 17; 10 Anne, c. 15) that the bankrupt could obtain a discharge, and then only with the consent of a specified majority of his creditors. Loveland on Bankruptcy (2d Ed.) c. 1; Bush on Bankruptcy, introductory chapter. In this country the first bankruptcy act of April 4, 1800, c. 19 (2 Stat. 19), was confined to involuntary proceedings; and it was not until the act of August 19, 1841, c. 9 (5 Stat. 440), that voluntary proceedings could be instituted. The discharge of a debtor from his debts was grafted upon bankruptcy proceedings as an incident wrought by an advanced civilization. The fundamental principle of the bankruptcy law is to take into legal custody the property of the bankrupt, and to distribute it ratably among creditors, protecting the latter from frauds and unjust preferences, and to relieve the honest bankrupt from his load of obligation. The latter may or may not result, but that in no way interferes with the right of the court, either by voluntary or involuntary proceedings, to take over and distribute among creditors the estate of the bankrupt. The fact that one has been discharged from his debts within six years cannot possibly be an objection to the institution of involuntary proceedings by creditors. That would leave them at the mercy of the debtor, and tend to the perpetration of the very frauds denounced by the bankruptcy act. Why, then, should the debtor be debarred from doing that voluntarily which the creditors might compel, namely, the turning over of his estate for equitable distribution among his creditors? It is urged that the case is no different from that of a suit brought upon negotiable paper before its maturity. But the cases are not analogous. The one is a demand for money not due. The other is an appropriation of the debtor's estate to all the creditors, to be followed possibly by an application for discharge, which may or may not be granted. A discharge is not an absolute right existing at the time of filing the petition in bankruptcy. The right or privilege arises subsequently, and is granted upon the conditions of the statute, and is dependent in part upon the conduct of the bankrupt after the filing of his petition in bankruptcy. Those conditions cannot be applied until application has been made for a discharge. But whether the discharge is or is not applied for, or can or cannot be granted, the rightful jurisdiction of the bankruptcy court to accept the appropriation of the debtor's estate for distribution among his creditors is in no way affected. A case somewhat analogous is that of In re Houghton, Fed. Cas. No. 6,727, arising under the act of 1841. There it was urged that a fraudulent transfer by the debtor would prevent an adjudication in voluntary bankruptcy. The court ruled otherwise, although the fraudulent transfer would

have prevented a discharge from indebtedness, Betts, District Judge, saying, "But it [the act] does not say that the party shall be prevented from being a bankrupt, but that he shall be deprived of the benefit of the act."

The order is reversed, and the clerk will certify this ruling to the court below.