_____

In re NASH.

(District Court, S. D. West Virginia. March 20, 1918.)

No. 723.

1. BANKRUPTCY ☞51.—VACATION OF ADJUDICATION—MODE.

A motion, with notice, for the vacation of an order of adjudication on a voluntary petition in bankruptcy, is the proper procedure to raise the propriety of the adjudication.

2. BANKRUPTCY ☞39—SUCCESSIVE VOLUNTARY PETITIONS—DISMISSAL OF PROCEEDINGS.

Under Bankruptcy Act July 1, 1898, c. 541, § 18g, 30 Stat. 551 (Comp. St. 1916, § 9602), providing that, upon the filing of a voluntary petition, the judge shall hear the petition and make adjudication or dismiss the same, a second voluntary petition in bankruptcy, by one who had within six years received a discharge on his first voluntary petition, should be dismissed, where the petitioner had no assets, and the only effect of the proceeding would be to hinder, delay, or defraud his creditors; and an adjudication already entered should, on such facts appearing, be set aside.

In Bankruptcy. In the matter of the bankruptcy of George L. Nash. On petition to dismiss the bankruptcy proceedings and revoke the adjudication. Adjudication of the bankrupt, and the bankruptcy proceedings, revoked, vacated, and set aside.

French & Easley, of Bluefield, W. Va., for petitioner.
Luther G. Scott, of Bluefield, W. Va., for bankrupt.

KELLER, District Judge. This case presents a question which so far as I have been able to discover, is a new one in some of its features. Section 18g of the Bankruptcy Act provides that:

"Upon the filing of a voluntary petition, the judge shall hear the petition and make the adjudication or dismiss the petition."

[1] In this case the petition itself presented grounds for the adjudication, and the adjudication went as a matter of course; but the petition did not show that the petitioner had in 1914 been adjudicated a bankrupt upon his voluntary petition and received a discharge from

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

his debts in August of that year. The present petition shows no assets, and the date of it shows that by no possibility, under the existing law, can the petitioner receive a discharge from the debts scheduled. Had these facts, namely, that the petitioner had received a discharge in August, 1914, together with the fact he had, at the time of filing his second petition, no assets, been disclosed by the petition, I think it would have been the duty of the judge, under the provisions of section 18g, to have dismissed the petition, because the only apparent object of such petition would have been to embarrass creditors in obtaining judgments and executions against the petitioner. The adjudication having been made, now comes a creditor, George E. Stupalsky, and files a motion, with notice, for the vacating of the order of adjudication and the setting aside of the said bankruptcy proceedings. This appears to be the proper proceeding upon a showing of sufficient grounds to justify action by the court. Collier on Bankruptcy (11th Ed.) p. 484.

[2] The petitioner, Stupalsky, strengthens the imputation as to the purpose of the bankrupt in filing his second petition by setting forth that he, having been indorser on a note for $25 made by Nash, and which he as such indorser had to pay, brought suit before a justice of the peace against Nash, and that Nash filed before the justice a copy of the order adjudicating him a bankrupt, and challenged the jurisdiction of the justice to award judgment. These facts appear to make a strong case for relief of the creditor, because the courts in bankruptcy were not instituted for the purpose of aiding men to delay or defraud their creditors, and in the present instance no purpose can be perceived in filing this petition in bankruptcy, except to hinder and delay, if not to defraud, creditors.

Two specific decisions have been cited by counsel for the bankrupt, but neither of them discloses facts similar to those arising in this case. In the case of In re Little, 137 Fed. 521, 70 C. C. A. 105, decided by Circuit Judge Jenkins, the facts were utterly dissimilar to those in the present case, because the six-year period would have expired before it became necessary for the bankrupt, under the law, to apply for his discharge, and in addition there were assets to be administered by the bankruptcy court. The latter case (In re Smith [D. C.] 155 Fed. 688) has no bearing, except upon the point decided in the Little Case, and with which decision I agree, that the question in relation to the provision of the Bankruptcy Act relating to a second discharge does not preclude a bankrupt from filing a second voluntary petition within six years from the date of his first petition. The present decision is based upon the ground that, there being no assets and no possibility of a discharge being granted, the petition necessarily has its inception in a fraudulent design to hinder and delay creditors, and is not a bona fide petition to the court, invoking its jurisdiction in the distribution of assets.

After a careful examination of the cases cited in support of bankrupt's position, and a study of other cases upon the subject, I am of opinion that those decisions are not in conflict with the relief sought

by petitioner, Stupalsky. In those cases the bankrupt surrendered assets and asked the bankruptcy court to equitably and ratably distribute same among his creditors. This is clearly in harmony with the spirit and purpose of the Bankruptcy Act, and I see no reason why such persons should not so invoke the aid of a court of bankruptcy, whether entitled to a discharge or not, which discharge, after all, is merely an incidental subsequent right or privilege, which may or may not be granted to the bankrupt, dependent upon conditions within which the bankrupt must place himself before securing same.

But the case at bar presents an entirely different situation. Here the bankrupt has apparently no property to be distributed. The only purpose or object, therefore, which could have actuated him to have filed his voluntary petition in bankruptcy, was to hinder and delay or defraud his creditors in the pursuit of their legal remedies against him. The Bankruptcy Act was enacted primarily for the benefit of unfortunate debtors, but the bankruptcy court at the same time is a court of equity, and the rights of creditors are entitled to consideration; and in this case to hold that Nash can, so often as he sees fit to do so, file a petition in bankruptcy and be adjudicated a bankrupt, surrendering no property for distribution, and well knowing that a discharge cannot be granted him, would, in my judgment, amount to a gross fraud and injustice upon his creditors, and arm him with means by which he could perpetually, by simply filing his petition in bankruptcy periodically, prevent his creditors from exercising their legal remedies against any property he might have or they might unearth. While the Bankruptcy Act was, as above stated, enacted primarily for the protection and benefit of embarrassed debtors, it was never intended to work hardships and possible injustices upon creditors.

For these reasons, the adjudication of the bankrupt, and the bankruptcy proceedings, are revoked, vacated, set aside, and annulled.