## MOORE et al. v. LINAHAN et al.
### No. 156.

Circuit Court of Appeals, Second Circuit.
Jan. 27, 1941.

Weinstein & Levinson and Baar, Bennett & Fullen, all of New York City (Frank Weinstein, Samuel J. Levinson, and John P. Hurley, all of New York City, of counsel), for appellants.

Raymond J. Scully and Trachman & Krosner, all of New York City, and Edward Robinson, Jr., of Oyster Bay, L. I., N. Y. (Raymond J. Scully, Hilbert I. Trachman, and Irving R. Krosner, all of New York City, on the brief), for appellees.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

Agatha L. Moore, a creditor and shareholder of the debtor, and other shareholders appeal from ten orders of the court of bankruptcy made in a re-organization proceeding under Chapter X, 11 U.S.C.A. § 501 et seq. It will be more convenient to describe the general controversy and take up the separate orders afterwards, for the disposition of most of them will follow that of the principal one. The main controversy is whether the debtor should be re-organized under Chapter X, or by "arrangement" under Chapter XI, 11 U.S. C.A. § 701 et seq.: both parties, the majority, and the minority, shareholders, agree that some re-organization is necessary. The important facts are as follows. The debtor was a maker of coffins and other funerary supplies in the City of New York; its liabilities were $234,000 and the book value of its assets, $416,000; whether it was insolvent in the bankruptcy sense was uncertain, but in any event it needed $40,000 to $50,000 added working capital to go on with any reasonable chance of success. On February 20, 1940, of the 2,951 shares of common stock outstanding Agatha L. Moore held 1,700 and the other appellants—who were of her party—held 100; while Anna Louise Linahan, individually or as an executrix, held 750 shares, and the officers or directors of the company—who were of her party—held 401. The shareholders were thus divided into two factions in the relative voting power of substantially three to two in favor of the Moore party. The creditors were also divided, but here the strength of the parties was reversed. On February 20, 1940, three creditors of the debtor filed a petition to re-organize it under Chapter X; the directors of the debtor probably knew in advance of this proceeding, and possibly they inspired it; at any rate on the 21st they met and passed a resolution that the debtor thereby declared its inability to pay its debts and consented that the petition should be approved and that the debtor should file an answer to that effect. This it did on the 23d, although all five directors would have gone out of office on the 24th, the day of the annual meeting of shareholders. By an order made on the 21st under § 156 the judge had put the debtor "in possession," and, although this order did not enjoin them from holding the annual meeting, the Moore party thought it unwise to elect new directors at that time, and merely adjourned the meeting until March 2d, hoping by then to be relieved of disability. On the 28th of February they moved for leave to elect directors, but the referee, to whom the judge had meanwhile sent the whole proceeding, forbad any election for the time being, and after fuller consideration did so permanently on March 20th. The Moore party appealed from the judge's order confirming this injunction and we reversed it on May 6th. In re J. P. Linahan & Co., 2 Cir., 111 F.2d 590. Mrs. Moore had meanwhile filed an individual answer to the petition as a creditor on February 26th, and on March 28th she and her supporters filed another answer as shareholders. After several hearings at which the referee refused to treat as issuable the act of bankruptcy alleged in the petition, he reported in favor of approving the petition on April 26th and the judge confirmed his report on May 18th. Upon this order of confirmation the real controversy hinges.

We start with the now incontrovertible fact that it was unlawful to forbid the election of directors. It was only by virtue of the erroneous injunction that the old board continued in office, but by so doing it wrongfully prevented the new board from filing an amended answer within the time—twenty days after Feb-

ruary 23d—allowed them under Rule 15(a), 28 U.S.C.A. following section 723c. That answer would have withdrawn the debtor's consent to an approval of the petition and would have put in issue the act of bankruptcy along with all the other allegations of the petition. Unless therefore the law forbad withdrawal of the first answer once it was filed, the order of confirmation was wrong. The Linahan party reply that the law did forbid withdrawal of the answer, because it was in effect a voluntary petition for re-organization under § 130 of Chapter X, and a voluntary petition, being subject to § 59, sub. g, 11 U.S.C.A. § 95, sub. g, cannot be withdrawn except upon notice to all creditors.

■ It is indeed true, if we take the petition and answer together, that enough can be spelled out to satisfy the requirements of § 130. The answer itself declares that the debtor is "unable to pay its debts as they mature," and not only consents to the approval of the petition, but prays that it should be approved; the other necessary facts it admits by not denying them. Rule 8(d). Thus the debtor has expressly or impliedly made all the declarations that it need have made if it had filed a petition. However, before the enactment of § 77B, 11 U.S.C.A. § 207, it had been several times either held, or said obiter, that an answer consenting to adjudication under an involuntary petition was not itself a voluntary petition. We so held in 1913 (In re Condon, 2 Cir., 209 F. 800); so did Judge Sibley in 1923 (In re Supreme Lodge of the Masons Annuity, D.C., 286 F. 180, 182), and Judge Patterson in 1931. In re Elmsford Country Club, D.C., 50 F.2d 238. The opinion in Central State Bank v. Harrington, 6 Cir., 4 F.2d 514, also said the same thing, though it was not necessary to the holding; and the point was in fact involved but not observed in Canute S. S. Co. v. Pittsburgh & West Virginia Coal Co., 263 U.S. 244, 44 S.Ct. 67, 68 L.Ed. 287, and In re Reed Co., 2 Cir., 102 F.2d 685. The law was changed in § 77B, sub. a, which expressly gave the privilege to a debtor against which an involuntary petition for adjudication was filed of petitioning for re-organization by answer. That was necessarily before adjudication, and the section added that either before or after adjudication the debtor might proceed by petition. But nothing was said about changing an involuntary re-organization into a voluntary one by answer, and

since the clause which gave the privilege spoke only of "adjudication," presumably it was limited to liquidations. Nevertheless, no such limitation was observed; two circuits decided—one of them twice—that an answer in an involuntary proceeding which alleged all the facts necessary to a voluntary petition could be treated as a voluntary petition. In re Palisades-on-the-Desplaines, 7 Cir., 89 F.2d 214; In re Park Beach Hotel Bldg. Corp., 7 Cir., 96 F.2d 886; Snyder v. Fenner, 3 Cir., 101 F.2d 736. Moreover, none of these decisions went upon the theory that the privilege given the debtor in liquidation proceedings ought by analogy to be extended to a re-organization proceeding: on the contrary the first opinion, which the other two followed without independent consideration, merely said that if the answer had all the substance of a petition, its formal difference from a petition should be ignored. Chapter X did away altogether with the answer as a voluntary petition; § 127 is all that remains of the earlier law and it merely allows the debtor to petition for re-organization either before or after adjudication. Thus it appears that, at least when the re-organization emerges from a liquidation, an answer can no longer serve as a petition; and, if so, it is incredible that it should retain that office when interposed in a re-organization proceeding itself. The diversion from the law as it had stood before § 77B, was abolished.

There is also another difficulty. Section 77B, sub. a, allowed the creditors of a corporation to file an involuntary petition only in case the "corporation has not filed a petition or answer under this section," though it did not forbid the debtor to file a voluntary petition in case an involuntary petition had been filed. Chapter X changed this; § 126 allows either the corporation or three of its creditors to file a petition only "if no other petition by or against such corporation is pending under this chapter." That clause cannot be read distributively—that is, that a corporation may not file, if it has already filed a voluntary petition; and that creditors may not file, if they or other creditors have already filed an involuntary petition; for that would allow creditors to cross a voluntary petition with an involuntary petition of their own, which, as we have just seen, § 77B, sub. a, had forbidden, and which it seems certain that Congress did not in-

tend to permit. Nor can we say that the clause was not meant to apply to voluntary petitions at all; first, because that would be directly in the teeth of the text, and, second, because the clause, as applied to voluntary petitions, forbids a corporation that has filed one petition from filing another, and at least so much was certainly part of the purpose. Textually therefore, there is no escape from saying that the pendency of an involuntary petition against a debtor forbids its filing a voluntary petition. This is moreover in apparent accord with the report of the Senate Committee (Senate Report No. 1916, 75th Congress, Third Session p. 25): "The provision avoids any multiplicity of petitions; only one petition is allowed to be pending at the time by or against a debtor." The commentators appear to have accepted the text in the same sense. Finletter, "The Law of Bankruptcy Reorganization," p. 92; Gerdes, "Section 77B, The Chandler Bill" etc., 35 Mich.L.Rev. 363, 380, 381; Weinstein, "The Bankruptcy Laws of 1938," pp. 202, 203; Remington § 4430.

Furthermore, this construction fits with purposes of Chapter X as a whole, for it is at least doubtful whether a debtor can ever need to file a voluntary petition after an involuntary petition has been filed. It need not answer at all, or it may answer without putting in issue any of the allegations of the petition; if it does either, the proceeding takes the same course as a voluntary petition, § 142. The only possible embarrassment would be in case, although the debtor wished the re-organization to go through, a creditor or "indenture trustee" or shareholder filed an answer under § 137, which any of them may do whether the petition be voluntary or involuntary. This privilege is important when the petition is voluntary because the creditor, or trustee, or shareholder, is obviously interested in preventing an unnecessary re-organization, or one which will prove abortive; and the same is true of involuntary petitions. But involuntary petitions must also allege, in addition to those facts which a voluntary petition must contain, one of the five allegations set out in § 131, and it must be owned that, read literally, § 137 allows a creditor to "controvert" these as well as those prescribed in § 130. The first four of these five alternate allegations are in substance that the debtor's estate is already in process of some kind of administration; they are necessary only as a protection to the debtor, since they show that its business has already succumbed to legal custody. The fifth—an act of bankruptcy—is even more clearly for its protection. It is impossible to see how a creditor, or an "indenture trustee" can have any interest in denying any one of them, assuming that the debtor's affairs are ripe for re-organization; and if § 137 must be construed to give them that privilege, it was apparently an oversight. We do not forget that before 1938 a creditor, intervening in a liquidation procceding, did have the privilege of contesting the act of bankruptcy; if he had a lien subject to challenge, this gave him the power to scotch the attack in limine. But § 18, sub. b, 11 U.S.C.A. § 41, sub. b, has now been amended so that he no longer has that privilege, being relegated to his defence if the trustee attacks his lien. It will certainly be a curious anomaly if a creditor retains that privilege in re-organization which he has just lost in liquidation. As to shareholders, the privilege of denying the allegation required by § 137 is of use only in cases where they could dispute a voluntary petition as well; that is, in those where the debtor's management was acting in fraud of their rights.

For these reasons it seems to us at least doubtful that when, as here, the debtor chooses to pray for the approval of an involuntary petition, either creditor, "indenture trustee" or stockholder can press to decision the added allegation required by § 131; that is, can vicariously assume the debtor's defence as to something against which it does not want protection and in which as such the creditor can have no interest. But if that is not true and if § 137 must be read with strict literalness, certainly the occasions will be rare, when it will be of service for a debtor to file a voluntary petition, pending an involuntary, and so to short-circuit, so to say, such an opposition. That possibility, assuming that it exists, does not justify us in interpolating into § 126 an exception contrary to the ordinary meaning of the words. For these reasons we think that the debtor's answer of February 23d cannot be regarded as a voluntary petition.

It is true, as we have said, that, had the old board filed a voluntary petition, § 59, sub. g, would have applied to it and the new board elected on the 24th could

have withdrawn it only upon notice to all creditors. We need not say what would be the issues justiciable upon the return day of that notice. The Seventh Circuit has held that a petition may be withdrawn before adjudication unless some of the creditors have meanwhile acted in reliance upon it so that the withdrawal will be to their detriment. In re Thorpe, 7 Cir., 12 F.2d 775. In that event it probably makes no substantial difference in the case at bar whether the debtor's answer can be regarded as a petition, for the new board could have withdrawn it as of course on the return day, as it is not likely that any creditor had already acted upon the faith of it. On the other hand § 59, sub. g, may give to creditors standing to object to the withdrawal of a petition, though they have not acted in reliance upon it, whenever its pendency gives them an advantage. In re Sullivan, D.C., 23 F.Supp. 142. Indeed in Re Epstein, D.C., 12 F.Supp. 450, and In re Browne, D.C., 30 F.Supp. 157, the court apparently refused leave to withdraw only because the bankrupt had not made out a satisfactory excuse. If any interest of the creditors will suffice to resist withdrawal, the petitioning creditors at bar, who did have an interest in a re-organization under Chapter X, could have tried out on the return day whether all the conditions existed which § 130 prescribes; and the only one of these that was disputable was whether Chapter XI was adequate. That the referee actually did try and decide and the judge confirmed him. Thus on that view of § 59, sub. g, our decision would turn upon a question of form rather than of substance, which is to be avoided when possible, though here it seems to us impossible to avoid it for the reasons we have given. Be that as it may, we need not too much regret it even if in this instance form may prevail, because, although directors, so long as they hold office and use an honest judgment, are immune from the control of their shareholders, People ex rel. Manice v. Powell, 201 N.Y. 194, 200, 201, 94 N.E. 634, the power to commit a corporation one day before they know they are to be displaced, to a course known to be disapproved by the majority is not one to be generously extended. Normally the shareholders should have their way. The order of confirmation must be reversed.

We may dispose of the other nine orders without extended discussion.

(1) We dismiss as moot the appeal from the order of May 18th, denying a delay in confirmation of the referee's report.

(2) The order of May 27th limiting the powers of the new directors is affirmed. Section 188, 11 U.S.C.A. § 588, gives complete power to the judge to control a "debtor in possession"; that power was not abused.

(3) The order of June 5th fixing a date for filing a plan and claims must of course be reversed.

(4) The order of July 5th denying leave to the debtor to retain Baar, Bennett & Fullen as its attorneys is affirmed. If this does not fall within § 191, 11 U.S.C.A. § 591, because an attorney is not an "officer" of the corporation, at least it is within the court's powers under § 188.

(5) The order of July 5th granting the application of the "debtor in possession" to retain its own attorney is affirmed for the same reason.

(6) The appeal from the order of July 5th denying leave to reopen the order of confirmation is dismissed as moot, but the debtor is granted leave to file a new answer.

(7) The order of July 5th, denying approval of the election of the officers of the debtor is affirmed; the judge's discretion under § 191 is not shown to have been abused.

(8) The order of July 5th, authorizing a private sale of certain assets is affirmed.

(9) The order of July 5th refusing to approve the appointment of Weinstein and Levinson after their application was withdrawn is reversed. The debtor had the privilege of withdrawing the application.

After the amended answer has been filed the cause will be heard upon the new issues. We agree that the debtor should be kept under the present management until the unfortunate controversies between the factions are ended.

Orders reversed or affirmed in accordance with the foregoing.