In re Sherman T. BLUE.

In re Patricia M. BLUE a/k/a Patricia M. Walker.

In re Virginia Margaret LYNCH, f/k/a Virginia Margaret Danneker and Mrs. Richard J. Danneker, Bankrupts.

Bankruptcy Nos. 79–01709–L, 79–01710–L and 79–00065–K.

United States Bankruptcy Court, D. Maryland.

June 6, 1980.

Anthony W. Robinson, Singleton, Dashiell & Robinson, P. A., Baltimore, Md., for bankrupts Blue.

Edmund A. Goldberg, Sherbow, Shea & Tatelbaum, P. A., Baltimore, Md., trustee, pro se.

Joshua E. Raff, Gary A. Goldstein, P. A., Baltimore, Md., special counsel, for bankrupt Lynch.

Lawrence D. Coppel, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, Baltimore, Md., special counsel, for trustee.

## MEMORANDUM OPINION AND ORDER

HARVEY M. LEBOWITZ, Bankruptcy Judge.

These cases come before this court on Motions to Dismiss their Voluntary Petitions filed by the respective bankrupts under the Bankruptcy Act of 1898, as amended ("the Act"). Through these motions, the court has occasion to revisit the "Savings Provision", § 403(a) of the Bankruptcy Reform Act of 1978, Pub.L. 95–598, November 6, 1978, 92 Stat. 2549, ("the Code"). The cases are being considered together in this opinion because they represent opposite ends of the pole. Sherman T. and Patricia M. Blue are at one end of the spectrum, where creditors may expect, at best, a nominal distribution under the Act and where an express representation has been made that they have no intention to file under the Code. At the other end is Virginia Margaret Lynch, whose unsecured creditors may expect a substantial distribution under the Act and where there has been an express representation made of her explicit purpose to file under the Code should her petition under the Act be dismissed.

The common issue presented is whether the bankrupts, who were voluntary petitioners under the Act, may now voluntarily dismiss, without prejudice, their cases presently being administered under the Act, where there is a likelihood or a possibility of a refiling under the Code and the potential utilization of the more liberal benefits available to a debtor under the Code, notably among which are the generous federal exemptions afforded under 11 U.S.C. § 522(d).[1]

---

1. The voluntary dismissal of a no-asset case under the Act, that is a case where all the assets of the bankrupt may be taken as exempt property, is not involved in the instant proceed-

## THE BLUE CASES

The Blue cases are not consolidated, however, the assets, liabilities, and interests of the bankrupts are substantially the same and each case presents the same questions of law. The Voluntary Petitions of Sherman T. Blue and Patricia M. Walker Blue were filed under the Act on September 27, 1979. The first meeting of creditors in each case was held on November 15, 1979. An adjourned first meeting was held on December 6, 1979. Edmund Goldberg, Esq., was appointed Trustee in both cases on December 10, 1979. On December 17, 1979, the petitioners filed a Motion to Dismiss Voluntary Petitions in their respective bankruptcies seeking to withdraw their petitions without prejudice pursuant to Bankruptcy Rule 120. The Trustee, on January 31, 1980, filed an Answer to Motion To Dismiss in each case opposing the dismissal and arguing that there may be some nonexempt equity in real and personal property of the estate, that a dismissal would allow a later filing under the Bankruptcy Code, and that the probable selection of the more liberal federal exemptions would deprive creditors of property from which they would have received satisfaction under the Bankruptcy Act and would thereby prejudice the rights of creditors. A Memorandum of Law was filed by the Blues on March 12, 1980, in which they stated that, contrary to the Trustee's contention of their intention to file under the Code, they wished "to avoid the stigma of bankruptcy under the Act as well as under the Code," and that "they believe themselves to be in a better position to meet their debts" and "pay them off as originally planned." The Trustee on March 14, 1980, filed a Memorandum Of Law In Opposition To Bankrupts' Motion To Dismiss Without Prejudice. The Trustee, on his own behalf, and Anthony W. Robinson, Esq., on behalf of the Blues, appeared and argued at a hearing held on March 21, 1980. The parties stipulated that there would be a nominal payment to creditors under the Act and that the creditors would get substantially less under the Code.

## THE LYNCH CASE

On January 15, 1979, Virginia Margaret Lynch filed her Voluntary Petition under the Bankruptcy Act. The first meeting of creditors was held on February 5, 1979. The bankrupt was discharged in bankruptcy on May 10, 1979. On September 17, 1979, Samuel J. Friedman, Esq., was appointed Trustee, and on October 19, 1979, he was appointed attorney for himself. Ms. Lynch, by her attorney, Carl A. Durkee, Esq., filed on January 8, 1980, an Application For Dismissal Without Prejudice in which she sought to voluntarily dismiss her petition "so that she may file her bankruptcy petition under the Bankruptcy Rules effective as of October 1, 1979." On January 30, 1980, Lawrence D. Coppel, Esq. was, on the Trustee's Application, appointed Special Counsel for the Trustee. On February 20, 1980, the law firm of Gary A. Goldstein, P. A., was, on Ms. Lynch's Application, appointed Special Counsel for the bankrupt. The bankrupt on March 11, 1980, filed a Memorandum In Support Of Application To Dismiss Without Prejudice. The Trustee on March 17, 1980, filed a Memorandum of Law and an Opposition Of Trustee To Bankrupt's Application For Dismissal Without Prejudice, and in the latter document stated that a dismissal without prejudice will not be in the best interests of the bankrupt's creditors and that a dismissal for the purpose of filing under the Bankruptcy Code would be contrary to both the "Savings Provision" and public policy. A hearing on the Bankrupt's Application for Dismissal was held on March 21, 1980 (the same date as the hearing in the Blue cases) at which time the parties, through their counsel, agreed to submit on the Memoranda previously filed in these proceedings.

---

ings. The court, however, notes that is such a circumstance, there would be no distribution to creditors and little or no likelihood of any attempt to seek a dismissal in order to refile under the Code, since there would be no benefit to be derived by the debtor by availing himself of the more liberal exemptions.

## OPINION

Upon the foregoing facts, the memoranda, and the arguments of counsel, the court renders its opinion.

Section 403(a), the "Savings Provision" of the Bankruptcy Reform Act of 1978, requires that cases filed under the Bankruptcy Act of 1898, as amended, be conducted according to the provisions of that latter Act. Section 403(a) provides that:

> A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act [the Bankruptcy Reform Act of 1978] had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act [the Bankruptcy Reform Act of 1978] had not been enacted.

11 U.S.C. § 403(a). Collier has interpreted § 403(a) to mean that:

> . . . a case which was commenced under the Bankruptcy Act by the filing of a petition and any matters and proceedings which arose in that case or which are related to any such case are to be conducted, determined (and concluded) under the Bankruptcy Act just as though the 1978 legislation had not been enacted.

1 Collier on Bankruptcy ¶ 7.03[1] at 7–16 (15th ed. 1979). The House Judiciary Committee commented that "[t]he new law will not affect cases commenced under the old law. Those cases will proceed as though this Act [the Bankruptcy Reform Act] did not take effect." H.R.Rep.No.95–595, 95th Cong., 1st Sess. 459 (1977). *See also*, S.Rep. No.95–989, 95th Cong., 2d Sess. 166–167 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6414.

■ The bankrupts' Voluntary Petitions commenced cases under the Bankruptcy Act of 1898, as amended. These cases are presently pending under the Act and are being administered in accordance with the provisions of the Act. Under the clear and unambiguous language of the Savings Provision, this court must conduct and determine the bankrupts' cases under the Bankruptcy Act as if the Bankruptcy Code "had not been enacted." *In re Macon Uplands Venture*, 2 B.R. 421, 1 C.B.C.2d 246, 254 (D.Md.1979); *In re Eagson Corp.*, 1 B.R. 777, 1 C.B.C.2d 309 (Bkrtcy.E.D.Pa.1980). Furthermore, the petitioners' voluntary motions to dismiss, being proceedings related to cases commenced under the Act, must also be conducted and determined under the Act as if the Code had not been enacted. By enacting the Savings Provision, Congress has expressed its intent that the substantive rights of bankrupts and creditors in cases commenced under the Bankruptcy Act should remain unaltered by the passage of the Code. *In re Parr*, 1 B.R. 453, 1 C.B.C.2d 228, 229 (Bkrtcy.E.D.N.Y.1979). The court is therefore concerned with the standard to be applied and the factors to be considered under the Act in deciding whether or not to grant the bankrupts' motions to dismiss their Voluntary Petitions.

■ It is the general rule that a voluntary bankrupt has no absolute right to a withdrawal or dismissal of his bankruptcy petition once it has been filed, but that such withdrawal or dismissal is granted by leave of court and is subject to the court's sound discretion. *In re International Airport Inn Partnership*, 517 F.2d 510, 511 (9th Cir. 1975); *Stern v. Barnett*, 452 F.2d 211, 212 (7th Cir. 1971); Annotation "Right of Bankrupt to Withdrawal of Voluntary Petition for Bankruptcy," 17 A.L.R.Fed. 959 (1973). Section 59(g) of the Bankruptcy Act, 11 U.S.C. § 95(g), and Rule 120 of the Rules of Bankruptcy Procedure govern the disposition of the instant motions. However, neither this section of the Act nor the rule contain any standards or explicit factors to be considered in making a determination of such motions. Rule 120(c) does state that:

> Unless the order [dismissing the case] specifies to the contrary, dismissal of a case other than on the merits is without prejudice.

and this subsection is said to leave:

> . . . discretion in the court to determine in light of the circumstances

whether dismissal of a bankruptcy case otherwise than on the merits should bar future relief under the Act . . . .

Advisory Committee's Note to Rule 120, 12 Collier on Bankruptcy ¶ 120.01 at 1–103 (14th ed. 1978).

■ Case law has given some direction to judicial discretion in this area. It has been said that since "[t]here is no provision in the Bankruptcy Act setting forth requirements for a voluntary dismissal of a petition in bankruptcy, . . . his right to dismiss is controlled by equitable principles." *In re Sullivan*, 23 F.Supp. 142, 142 (N.D.Ga.1938). *See also, Moore v. Linahan*, 117 F.2d 140 (2d Cir. 1941); 3 Collier on Bankruptcy ¶ 59.-34[2.1] at 660 (14th ed. 1978). The court must balance the equities and weigh the "benefits and prejudices" of a dismissal. *In re Whitehead*, 583 F.2d 1104, 1107 (9th Cir. 1978).

In considering whether or not to permit dismissal, at the petitioner's request, of voluntary bankruptcy proceedings, the courts have weighed the good faith of the bankrupt, whether or not the bankrupt was guilty of laches, and the absence or presence of creditor consent. *In re Hand*, 18 C.B.C. 206, 208 (D.D.C.1978). The courts have particularly emphasized the possible adverse effects of the discontinuance of the proceedings upon the interests of creditors. After all,

[t]he Bankruptcy Act was enacted primarily for the benefit of unfortunate debtors, but the bankruptcy court at the same time is a court of equity, and the rights of creditors are entitled to consideration . . . .

*In re Nash*, 249 F. 375, 377 (S.D.W.Va.1918).

■ As a result of the fact that it has long been settled that a primary consideration is the presence of potential prejudice to creditors, the court should not allow a dismissal if it should find such dismissal to be potentially prejudicial to creditors. 17 A.L. R.Fed. at 966; *In re Hand*, 18 C.B.C. at 208. The court "must carefully weigh all relevant factors in order to assure itself that no possible harm would result to creditor interests." 18 C.B.C. at 208.

In *Stern v. Barnett, supra*, the Seventh Circuit reversed the granting of an application to voluntarily dismiss without prejudice stressing that:

[w]hether guidelines are found in equity rules or in the Federal Rules of Civil Procedure [Rule 41(a)], the matter of permitting the withdrawal and dismissal of the bankruptcy petition is within the sound discretion of the referee provided that the dismissal should not be permitted if anyone in interest will be unjustly prejudiced by permitting a withdrawal or a cessation of the proceedings.

452 F.2d at 212. Consequently, in safeguarding against the impairment of the rights of the creditors, the court must deny the requested dismissals if any "plain legal prejudice" would thereby result. *Id.*, at 213; *In re International Airport Inn*, 517 F.2d at 512. In furtherance of the court's obligation to safeguard the rights of the creditors, had the Trustees in the instant cases, the representatives of the creditors who have the duty to conserve and advance the interests of the estate entrusted to them, defaulted in the performance of their duty, this court could "upon application direct [them] in [their] duty or, if [they] be recalcitrant, remove [them] for disobedience, or permit a creditor to act in [their] name." *Fred Reuping Leather Co. v. Fort Greene Nat. Bank*, 102 F.2d 372, 373 (3rd Cir. 1939); 2A Collier on Bankruptcy ¶¶ 47.02–47.03 at 1943–1944.3 (14th ed. 1978).

The court must deny the petitioners' requests if the court feels that a dismissal of the bankruptcy would not be in the best interests of either the bankrupt or his creditors. *In re Hand*, 18 C.B.C. at 209.

In the *Hand* case, *supra*, Roger M. Whelan, Bankruptcy Judge for the District of Columbia, had occasion to confront the voluntary dismissal issue where the bankrupt sought to dismiss his voluntary petition because he was to receive a substantial legacy from the estate of a deceased uncle which would enable him to pay his creditors in full. The bankrupt further offered to es-

tablish an irrevocable trust for all funds received from the uncle's estate from which payment would be made to the creditors. Notwithstanding the possibility of full payment to creditors and the agreement to establish an irrevocable trust, Judge Whelan, in denying the bankrupt's motion to dismiss, stated that "[a]lthough, the fact of an anticipated, large inheritance would seem to mitigate against the consideration of prejudice to the bankrupt's creditors, this is not necessarily the case. . . . [T]he court still feels that a dismissal of the bankruptcy would not be in the best interests of either the bankrupt or his creditors." *In re Hand*, 18 C.B.C. at 208, 209.

Should this court grant the petitioners' request and dismiss the cases without prejudice, the following consequences and events would, or could be reasonably expected to, occur. There would be no relief afforded by this court from debts which could have been discharged. There would no longer be any injunction in operation to stay the bankrupts' creditors from pursuing their legal and equitable remedies allowed by Maryland law, and a rush to the courthouse doors could ensue. The six judgment creditors which Mr. and Mrs. Blue have scheduled as holding joint judgments against them could seek writs of execution, and other creditors could seek judgments. Judgments could be obtained and executed upon by the creditors of Ms. Lynch. Property could be replevied and sold. Foreclosure proceedings could be instituted. Garnishment actions could encumber the bankrupts' wages leading to further defaults on obligations until then kept current, including post-petition debts, resulting in further litigation. The bankrupts may well be faced with the same kind of circumstances that had initially brought them into this court to seek its protection. Dismissal resulting in such circumstances could hardly be in the best interests of the bankrupts.

Ms. Lynch has expressly stated her intention to refile under the Code. The Blues have expressly stated their intention to not refile under the Code and to pay their creditors in full. Although the court applauds the noble intentions of the Blues to pay their debts in full upon a dismissal of their petitions, their creditors may never give them the opportunity to do so, and even if given the opportunity, there can be no assurance, no matter how hard and in good faith they may try, that they will be able to satisfy their creditors and not be required to again seek relief in this court.

In light of these post-dismissal events, the court would not achieve what have been long held to be the chief purposes of the bankruptcy laws: "to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period," *Katchen v. Landy*, 382 U.S. 323, 328, 86 S.Ct. 467, 472, 15 L.Ed.2d 391 (1966), to equitably distribute the bankrupt's assets among his creditors, *In re Browy*, 527 F.2d 799, 802 (7th Cir. 1976), and to minimize injury to creditors, *In re Harwald Co.*, 497 F.2d 443, 444 (7th Cir. 1974). First, the debtor and the creditors would lose the convenience and efficiency of a single forum to resolve disputes. Second, the creditors would lose the statutory protection afforded by a court-appointed trustee in bankruptcy to administer the debtor's assets for the benefit of all of the creditors. Third, the structured order and priorities of distribution of the assets of the estate prescribed by the Bankruptcy Act would be obliterated and the success, if any, in collecting debts would depend upon the speed, tenacity, financial resources, and positioning of the creditors; in short, a creditor free-for-all. The creditors, all placed in the starting blocks by the automatic stay, would be unleashed by its dissolution and, as a consequence, the creditor first to obtain a judgment, garnishment, or levy will have the advantage over his fellow creditor. When left to the remedies available under Maryland law, it is not difficult for this court to envision the circumstance where a creditor who may have received some distribution in bankruptcy, will be unable to obtain any recovery on his claim from the debtor's assets should the case be dismissed.

Many believe that bankruptcy laws exist primarily as a shelter for debtors, for-

getting that the Bankruptcy Act is often invoked, not by the debtor, but by creditors who wish to take advantage of the means which it provides for the collection and liquidation of a debtor's estate.

1A Collier on Bankruptcy ¶ 14.01[6] at 1260.2 (14th ed. 1978). The inequitable distribution of the debtor's assets to the creditors that would likely result upon dismissal of the bankruptcy cases would be all but in the best interests of the creditors and would do violence to the purposes of the Bankruptcy Act. In *In re Hand*, even though it appeared that the bankrupt's assets outside bankruptcy would have been sufficient to satisfy the claims of all creditors, the court denied the bankrupt's request for dismissal as not in the best interests of the creditors. It is the opinion of this court that under the facts of the cases *sub judice* the probable loss by a creditor of his right to an equal *pro rata* distribution in bankruptcy would constitute "plain legal prejudice." On these grounds alone, petitioners' requests for the dismissal of their Voluntary Petitions should be denied.

The contention has been made that, as a consequence of the language of § 403(a), the court and the bankrupts must totally ignore and close their eyes to the very existence of the Code. Under this view, the court should not consider the likelihood or possibility of the bankrupts' refiling under the Code because to do so would contravene the Savings Provision, since these Act cases would then not have been conducted and determined under the Act "as if [the Code] had not been enacted." It is argued that if the court were to consider the likelihood or possibility of a refiling under the Code in making its determination regarding the voluntary dismissal of these Act cases, then these proceedings would have been conducted with the Code distinctly in mind, as if the Code had been enacted. Under § 403(a) the proceedings presently before the Court are to be determined under the Act as if the Code had not been enacted, and the substantive rights of the parties are to be governed by the law applicable to such proceedings as if the Code had not been enacted. The court, in deciding the present pro-

ceedings and the substantive rights of the parties, has been governed by the law under the Act and not the Code. The court must, however, take cognizance of the potential practical effect of a dismissal, upon both the bankrupts and the creditors. In doing so, the court can not escape the elemental fact of the Code's existence. If any of the bankrupts should decide to refile, the only act presently in existence under which they can file is the Code. Consequently, the court must, because of the explicit intention of Ms. Lynch and the possible later necessity of the Blues, consider the viable option of a refiling under the Code should their petitions under the Act be voluntarily dismissed without prejudice.

Applying the same standards as stated above, the court's inquiry turns toward whether or not any "plain legal prejudice" would result from the bankrupts' refiling for bankruptcy under the Code upon the voluntary dismissal of their bankruptcy cases under the Act. Under the Bankruptcy Act, the bankrupts may claim as exempt property that which is permitted by Maryland statutes. These exemptions are primarily $1000.00, money payable as insurance benefits, wearing apparel, tools of the trade, Md.Ann.Code, CJ §§ 11–504, 11–505 (1980 Repl.Vol.), wage attachments, Md. Ann.Code, CL § 15–601 (1979 Cum.Supp.), interests in insurance policies, Md.Ann. Code, Art. 48A, § 385 (1979 Repl.Vol.), and workmen's compensation awards, Md.Ann. Code, Art. 101 § 50 (1979 Repl.Vol.). Under § 522(b) of the Code, debtors must elect between the property exempt from process under applicable Maryland law, 11 U.S.C. §§ 522(b)(2)(A) and (B), *In re Levy Ford, Jr.*, 3 B.R. 559, 6 B.C.D. 202, 3 CCH Bkcy L.R. ¶b 67,429 (D.Md.1980), or the new and more liberal federal exemptions under 11 U.S.C. §§ 522(b)(1) and (d). Under the federal exemptions, the debtors each could exempt *inter alia* $7,500.00—and as much as $7,900.00—in equity in a principal residence, $1,200.00 in equity in one automobile, and $200.00 in any item of household goods.

As a result of the fact that the amendments to the schedules of the Blues' assets

have not as yet been filed as required by order of this court, it is difficult for this court to state with certainty precisely what property would be exempt and what property would remain in the estate should the Blues, upon dismissal, later find it necessary to exercise the viable option of filing a Voluntary Petition under either § 301 or § 302 of the Code, and should they, upon so doing, elect to take the federal exemptions. However, the Blues and their Trustee have stipulated that under the Code the creditors would receive substantially less than what they would receive on their claims under the Act. Since the creditors would receive only a nominal distribution under the Act, a refiling under the Code by the Blues and the selection of the federal exemptions would entirely defeat the creditors' right to receive anything.

The Trustee in *In re Lynch* has proposed, and the court adopts, the following comparison of distributions to Ms. Lynch's creditors should this court dismiss the bankrupt's petition and should Ms. Lynch exercise her express intention and file under the Code and select the federal exemptions.

|  | Bankruptcy Act | Bankruptcy Code |
|---|---|---|
| Gross Assets [2] | $ 32,000 | $ 32,000 |
| Mortgage and Lien Creditors | (20,570) | (20,570) |
|  | $ 11,430 | $ 11,430 |
| Exemptions: | ( 730) [3] | ( 7,900) [4] |
| Available for Distribution: | $ 10,700 | $ 3,530 |
| Projected Distribution to General Creditors: [5] | 100% | 40.1% |

As evidenced by the above, should Ms. Lynch be given the opportunity to carry out her intentions, the amount of the distributable estate will be reduced by at least $7,000.00, even if she is credited with the full $1,000.00 exemption under the Act. Indeed, the reduction could be greater if the bankrupt has incurred debts since the filing of her petition in January, 1979, which would be paid in a proceeding commenced under the Code. Ms. Lynch's unsecured

creditors will suffer substantial prejudice if her petition under the Act is dismissed for the purpose of allowing the bankrupt to file a case under the Code. The bankrupt, on page five of her Memorandum of Law, in fact admitted such prejudice would result. The court in *In re Weare*, 87 F.Supp. 413, 414 (S.D.N.Y.1949) in denying the bankrupt's motion to dismiss his voluntary petition held that:

[i]t is the rule, founded on sound principles, that permission to vacate an adjudication in bankruptcy will not be granted where it would result in either reducing or affecting the claim of a creditor in bankruptcy.

Accordingly, where the creditors of both the Blues and Ms. Lynch would receive less in satisfaction of their claims should the bankrupts refile under the Code, the bankrupts' motions to dismiss should be denied.

Further unfairness to all creditors would result by the granting of the bankrupts' motions to dismiss without prejudice and a consequent refiling under the Code. The automatic stay under Bankruptcy Rules 401 and 601 has precluded the creditors of the Blues, since September 27, 1979, and the creditors of Ms. Lynch, since January 15, 1979, from seeking satisfaction of their debts by judicial process or otherwise. For this protection of the Bankruptcy Act, the bankrupts were required to yield to their Trustees their non-exempt property for distribution to creditors. The benefits of bankruptcy are thus weighed against the costs in the endeavor to strike a balance between the rights of debtors and creditors. However, should the bankrupts exercise the option of immediate refiling under the Code available under dismissal without prejudice, they will have garnered the benefits of the increased exemptions and avoided the costs, while the creditors will again be powerless to enforce their rights as a result of the injunction which would automatically issue under 11 U.S.C. § 362. This court can not act so as to invite such inequity.

---

**2.** According to the bankrupt's schedules, her only non-exempt property has a market value of $32,000.00.

**3.** Balance remaining under schedule B–4 of the $1000.00 exemption under Md.Ann.Code, CJ § 11–504.

**4.** 11 U.S.C. §§ 522(d)(1) and (5).

**5.** According to the bankrupt's schedules, the claims of unsecured creditors total $8,642.69.

In the recent decision of *In re Harvell*, 3 B.R. 339, 340 (Bkrtcy.E.D.N.C.1980), where the bankrupt's voluntary motion to dismiss her pending case under the Act was not resisted by the creditors or the Trustee, and where the bankrupt did not appear at the hearing on the motion and no evidence was offered in support of the motion, the court denied the dismissal holding that to dismiss the petition "would not be in the best interest of creditors and would provide the bankrupt with an opportunity to substantially improve her position with a greatly enlarged exemption if she were inclined to exercise the rights to refile a petition in bankruptcy under the Bankruptcy Reform Act."

This court is also cognizant of the possibility that recusal may be necessary should the petitions be dismissed and should the bankrupts refile under the Code. The policy of the Code is "to remove the [Judge of the Bankruptcy Court] from administrative matters and not to involve him in situations where he will hear evidence outside of the context of a dispute that he must decide . . . ." H.R.Rep.No.95–595, 95th Cong., 1st Sess. 331 (1977); *Cf.*, S.Rep.No.95–989, 95th Cong., 2d Sess. 43 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6287. Therefore, if the court has previously presided at a meeting of creditors and examined the bankrupt under the Act, the court may have become too involved to impartially resolve controversies which might arise in a case under the Code. As a result, the policy of the Code may be jeopardized and thus disqualification may be required which would delay the case and cause inconvenience to the parties, by requiring the case to proceed before another bankruptcy judge located some distance from the City of Baltimore.

For all of the above reasons, the bankrupts' motions to dismiss the cases at bar should be denied.

In support of her motion to dismiss, Ms. Lynch cites *In re International Airport Inn Partnership, supra*, a case decided under the Act in which the Ninth Circuit affirmed the District Court's finding that the bankruptcy referee did not abuse his discretion in granting a voluntary dismissal of a Chapter XI petition. The facts of *International Airport*, however, make the case inapposite to the cases at bar. In that case the petition raised extremely complex matters involving issues that would merit a jury trial and would be beyond the competence of the referee to adjudicate. No complex issues are raised in the Lynch or Blue cases and no jury trials are necessary at present. In *International Airport*, the bankrupt's principal asset was no longer in the estate, having been forfeited out by foreclosure, which may have left insufficient funds in the estate to pay the administrative expenses incurred in the arrangement proceedings. Assets remain under the Act in the Lynch and Blue estates, not only sufficient to pay the costs of administration, but also to provide for a nominal distribution to the unsecured creditors in the Blue bankruptcies and a substantial distribution in the Lynch case. Furthermore, the *International Airport* case was pending in the bankruptcy court for less than two months before it was dismissed, neither a Trustee nor a creditors' committee had been appointed, and any prejudice to creditors from the stay was minimal at best. In contrast, the Blue cases have been pending for nearly eight months, and the Lynch case has been pending before this court for almost one and one-half years. Consequently, the prejudice to the creditors in the instant cases as a result of the stay is far more substantial than any prejudice in *International Airport*. In addition, Trustees have been appointed in the cases at bar and the administration of the bankrupts' estates is proceeding, whereas in *International Airport* there had been little or no administration of the estate. A further distinction lies in the fact that the *International Airport* case was a Chapter proceeding, which contemplates a plan of arrangement with creditors, is more complex, and generally will extend over a lengthy period of time, whereas the Blue cases and the Lynch case are straight bankruptcy cases where the Trustee's primary duty is simply to liquidate assets in an expeditious manner in order to maximize a distribution to the creditors.

Ms. Lynch has also cited *In re Macon Uplands Venture, supra,* in support of her Motion to Dismiss. However, her reliance upon that case is misplaced. In *Macon,* this court held *inter alia* that § 403(a) did not preclude the filing of a Chapter 11 case under the Code in this court where a prior Chapter XII case under the Act had been involuntarily and judicially dismissed by the bankruptcy court in the Middle District of Georgia. *Id.* 1 C.B.C.2d at 254–255, 2 B.R. 421. After the dismissal of the case, the bankruptcy court retained only limited jurisdiction solely for the purpose of performing ministerial functions, such as the setting of fees, *id.,* 254, 2 B.R. 421, and the only proceeding pending at the time of the debtor's filing under the Code was the debtor's appeal from the judicial dismissal to the United States District Court for the Middle District of Georgia, which appeal the debtor itself had attempted to dismiss without success. *Id.,* at 254–255, 2 B.R. 421. Under the Act, a " 'bankruptcy case' . . . embraces all the controversies determinable by the court of bankruptcy and all the matters of administration arising during the pendency of the case." Advisory Committee's Note to Bankruptcy Rule 101, 12 Collier on Bankruptcy ¶ 101.01 at 1–1, 1–2 (14th ed. 1978). Thus, since all administration of the case had been completed when the bankruptcy court involuntarily dismissed the case on October 1, 1979, there was *no bankruptcy case* pending under the Act, either in the bankruptcy sense or as contemplated by § 403(a), either in the bankruptcy court or anywhere else, at the time Macon Uplands Venture filed under the Code. Due to the date of the the judicial dismissal, Macon was compelled to file under the Code and was unable to take advantage of any of the provisions theretofore available under the Act since the Act no longer existed. Consequently, when Macon filed its petition under Chapter 11, the debtor was not governed by the Act, but by the Code. This court has always maintained that should the United States District Court for the Middle District of Georgia reverse the dismissal of the Chapter XII petition and remand for further substantive

administrative proceedings in the bankruptcy court, those subsequent proceedings would be governed by the terms of the Bankruptcy Act. *Macon,* 1 C.B.C.2d at 254–255, 2 B.R. 421. In complete contrast to the facts in *Macon,* the bankrupts' cases are still pending before this court under the Act, are governed by the provisions of the Act, and the bankrupts' estates are presently being administered under the Act by Trustees appointed under the Act. Moreover, in *Macon,* the dismissal of the "case under the Bankruptcy Act was not voluntary on the part of the debtor, but was instead dismissed by the court." *Id.,* at 255, 2 B.R. 421. In the cases now before this court, the bankrupts seek to dismiss their petitions voluntarily.

In addition, Ms. Lynch has cited this court's statement in *Macon* that it

> . . . considers the concerns raised by this case and by situations which may be presented in other cases that are presently pending under the Act to be the proper province for Congressional action and not for the courts.

*Id.* Although it is unclear from her memorandum, Ms. Lynch may have inferred from the above-quoted statement that absent a clear statutory bar, this court would permit a voluntary dismissal of an Act case to allow the filing of a case under the Code until Congress provided otherwise. The inference is entirely incorrect and the result is quite to the contrary. The court agrees with Ms. Lynch's statement that "in view of the express language of § 403(a), the instant Motion to Dismiss must be determined solely with reference to the factors traditionally utilized in the exercise of the [c]ourt's equitable discretion under the Act." (Lynch Memorandum of Law at p. 8). The court in so applying those very same factors traditionally utilized in the exercise of the court's equitable discretion under the *Act* reaches the opposite result from Ms. Lynch and concludes that this court must prevent any prejudice to the rights of both debtors and creditors. Therefore, unless Congress should provide otherwise, the court will not, under the

**590**

Savings Provisions, permit the voluntary dismissal of these Act cases to allow refiling under the Code.

As an ancillary matter with respect to the Lynch case, the court notes that Ms. Lynch has already received her discharge in bankruptcy on May 10, 1979. As the bankruptcy court in *In re Whitehead*, 583 F.2d at 1108 n. 4 stated:

> . . . this request [to file a new petition] comes too late. Her discharge was granted . . . . If her case were dismissed and she were permitted to file, she would, in effect, be receiving the benefit of two discharges in bankruptcy within less than the statutory six year period.

Had Ms. Lynch sought to refile under the Act, and had the Act still been in existence, her request would have been denied in accordance with the *Whitehead* decision. The fact that the Act is no longer available to Ms. Lynch, should her petition be dismissed, would not change the outcome since the principles of the *Whitehead* case, which bars a bankrupt from receiving two discharges within the prohibited period, continues to be completely applicable with the advent of the Code.

Due to the prejudice to the interests of the creditors which would result not only from the dismissal of the bankrupts' Voluntary Petitions under the Act but also from the potential for refiling under the Code, either by express design or subsequent circumstances, it is hereby

ORDERED, that the Motion To Dismiss Voluntary Petitions filed in *In re Sherman T. Blue*, Bankruptcy No. 79–01709–L, and in *In re Patricia M. Blue a/k/a Patricia M. Walker*, Bankruptcy No. 79–01710–L, and the Application For Dismissal Without Prejudice filed in *In re Virginia Margaret Lynch f/k/a Virginia Margaret Danneker and Mrs. Richard J. Danneker*, Bankruptcy No. 79–00065–K, are hereby DENIED.